CASE NO. 22-12909

In The
# United States Court of Appeals
## For The Eleventh Circuit

**COMPULIFE SOFTWARE INC.,**

*Plaintiff/Garnishor – Appellant*

v.

**ZURICH AMERICAN INSURANCE COMPANY,**

*Garnishee – Appellee*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

———————————

**APPELLANT COMPULIFE SOFTWARE INC.'S
OPENING BRIEF**

———————————

JOEL B. ROTHMAN
joel.rothman@sriplaw.com
LAYLA T. NGUYEN
layla.nguyen@sriplaw.com
**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile
*Attorneys for Appellant Compulife Software Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

| |
|---|
| Allison L. Friedman, P.A. |
| Barney, Robert |
| Bishop, Tory |
| Compulife Software, Inc. |
| Diaz, Michael Jr. |
| Diaz, Reus & Targ, LLP |
| Friedman, Allison L. |
| Gulisano Law, PLLC |
| Gulisano, Michael |
| Johnson, Ahmand |
| Kutak Rock LLP |
| Levy, Aaron |

| |
|---|
| McCarthy, Brooke |
| Newman, Moses |
| Nguyen, Layla |
| Pan, Zhen |
| Reinhart, Bruce E. (Magistrate Judge) |
| Rosenberg, Robin L. (District Judge) |
| Rothman, Joel B. |
| Rutstein, Binyomin |
| Rutstein, David Brian |
| SRIPLAW |
| Sugg, Caleb |
| Zurich American Insurance Company |

## REQUEST FOR ORAL ARGUMENT

Oral argument would be helpful for this Court to understand the questions presented on appeal in this post-judgment garnishment proceeding, in particular the district court's error in granting summary judgment despite the disputed material facts that did not support denial of indemnity coverage.

Compulife has also requested oral argument in the pending appeal in the main cases which are consolidated, *Compulife Software, Inc. v. Binyomin Rutstein et. al.*, Case No. 21-14071 and *Compulife Software, Inc. v. Moses Newman et. al.*, Case No. 21-14074. The briefing is complete in the consolidated cases.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) ........................................................ ii

REQUEST FOR ORAL ARGUMENT ................................................................ iv

I.    JURISDICTIONAL STATEMENT ................................................................1

II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................1

III.  STATEMENT OF THE CASE ........................................................................2

    A.    Summary of the Allegations in the Two Co-Pending Cases ........................2

    B.    The Progress of the '08 Case and '42 Case Following Remand in *Compulife I.* ..................................................................................................4

    C.    The Procedural Posture of the Co-Pending Appeals ....................................6

    D.    This Proceeding: The Writ of Garnishment Directed to Zurich .................7

        1.    Zurich's Answer to the Writ and Compulife's Reply ...................................7

        2.    Proceedings on the Writ of Garnishment ......................................................9

        3.    The District Court's Grant of Summary Judgment to Zurich ....................13

        4.    Zurich's Motion for Attorneys' Fees ..........................................................23

IV.   STANDARD OF REVIEW ..........................................................................24

V.    SUMMARY OF THE ARGUMENT ...........................................................24

VI.   ARGUMENT .................................................................................................26

    A.    MATERIAL ISSUES OF FACT CONCERNING BINYOMIN'S INVOLVEMENT IN AWD—BINYOMIN'S INSURANCE AGENCY THAT FACILITATED THE PAYMENT OF OVERRIDE COMMISSIONS BY ORG—SHOULD HAVE PRECLUDED SUMMARY JUDGMENT ...............26

    B.    MATERIAL ISSUES OF FACT CONCERNING WHETHER BINYOMIN WAS MERELY NEGLIGENT OR ACTED RECKLESSLY SHOULD HAVE PRECLUDED SUMMARY JUDGMENT ............................31

    C.    THE DISTRICT COURT'S FINDINGS AFTER TRIAL COMBINED WITH BINYOMIN'S ADMISSION TO RECEIVING OVERRIDE COMMISSIONS CREATED MATERIAL ISSUES OF FACT FOR TRIAL....35

VII.  CONCLUSION ............................................................................................36

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..........38

CERTIFICATE OF SERVICE .................................................................39

# TABLE OF AUTHORITIES

## Cases

*Ave. Clo Fund, Ltd. v. Sumitomo Mitsui Banking Corp.*,
  723 F.3d 1287 (11th Cir. 2013) .......................................................... 34

*Compulife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. May 20, 2020) ......................................... 3, 4

*Compulife Software v. Rutstein*,
  No. 9:16-CV-80808-BER, 2021 U.S. Dist. LEXIS 237232 (S.D. Fla. Oct. 20,
  2021) ..................................................................................................... 6

*Farmer v. Brennan*,
  511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) .................................. 34

*Feliciano v. City of Miami Beach*,
  707 F.3d 1244 (11th Cir. 2013) .................................................. 30-31

*Ilias v. USAA Gen. Indem. Co.*,
  No. 21-12486, 2023 WL 2487329 (11th Cir. Mar. 14, 2023) ......................... 30

*Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*,
  669 F.2d 1026 (5th Cir. 1982) .............................................................. 24

*Compulife Software v. Rutstein*,
  No. 9:16-CV-80808-REINHART, 2021 U.S. Dist. LEXIS 160881 (S.D. Fla.
  July 12, 2021) ......................................................................................... 4

*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010) ........................................................... 24

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ............................................................................... 35

*Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing To Pol'y
No. 187581*,
  56 F.4th 1280 (11th Cir. 2023) ..................................................... 35, 36

*Tippens v. Celotex Corp.*,
  805 F.2d 949 (11th Cir. 1986) ............................................................. 24

*Wilchombe v. TeeVee Toons, Inc.*,
  555 F.3d 949 (11th Cir. 2009) ............................................................. 24

**Statutes**

18 U.S.C. § 1836 ................................................................. 5

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1961 ................................................................. 5

Fla. Stat. § 626.171 ........................................................... 29

Fla. Stat. § 626.2815 ......................................................... 29

Fla. Stat. § 688.003 ............................................................. 6

Fla. Stat. § 688.004 ............................................................. 5

Fla. Stat. § 77.28 .............................................................. 23

**Rules**

11th Cir. R. 26.1-1(a) ......................................................... ii

Fed. R. App. P. 27 ............................................................ 38

Fed. R. App. P. 32 ............................................................ 38

Fed. R. Civ. P. Rule 56 ....................................................... 10

**Other**

Restatement (Second) of Torts § 500 ................................... 34

## I.    JURISDICTIONAL STATEMENT

On July 28, 2022, in *Compulife Software Inc., v. Moses Newman et. al.,* 9:16-CV-81942-BER, Magistrate Judge Bruce E. Reinhart entered an Order Granting Garnishee Zurich American Insurance Company's Motion for Summary Judgment (ECF No. 406), discharged Zurich from further liability from Compulife's writ of garnishment, and dissolved the writ. (ECF No. 453). Compulife timely filed its notice of appeal on August 29, 2022. (ECF No. 454). The entry of summary judgment is a final order on the writ of garnishment. This Court has jurisdiction over appeals from final orders of the district courts under 28 U.S.C. § 1291.

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether Binyomin Rutstein committed omissions in his performance of professional services when Binyomin allowed his insurance license and AWD insurance agency to be used by his father and co-defendants in connection with the sale and solicitation of insurance to earn $184,225.87 in override commissions and referral commissions that could not have been earned but for the use of Binyomin Rutstein's license.

2.    Whether questions of fact remained concerning whether Binoymin Rutstein was negligent in allowing his father David Rutstein and his other co-defendants to use Binyomin's insurance license and AWD insurance agency in

1

connection with the sale and solicitation of insurance to earn $184,225.87 in override commissions and referral commissions made possible by their use of Compulife's transformative database and software code on www.NAAIP.org and www.BeyondQuotes.com.

3.      Whether the district court's findings after trial that Binyomin Rutstein caused Compulife to suffer damages in the amount of $184,225.87 of override commissions and referral commissions paid to the defendants, combined with Binyomin Rutstein's admission that "Binyomin Rutstein has received a few thousands of dollars of override commissions from a few insurance companies," and his failure to supervise his father, was sufficient evidence to create an issue of material fact requiring a trial on whether the Policy provided coverage for Compulife's claim based upon "a negligent act, error or omission" of Binyomin.

### III.    STATEMENT OF THE CASE

### A.    Summary of the Allegations in the Two Co-Pending Cases

Binyomin Rutstein (referred to herein as Binyomin to avoid confusing him with his father David Rutstein) was one of four defendants sued in two cases brought by Compulife in the Southern District of Florida: *Compulife Software, Inc., v. Binyomin Rutstein and David Rutstein,* 9:16-CV-80808-BER (the "'08 Case"), and *Compulife Software, Inc., v. Moses Newman, Aaron Levy, David Rutstein, and Binyomin Rutstein,* 9:16-CV-81942-BER, DE 317 (the "'42 Case").

The facts of both the '08 Case and '42 Case, were well and accurately summarized by this Court following the first bench trial, the decision from which this Court reversed and remanded in *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. May 20, 2020) ("*Compulife I*").

The '08 Case was filed against Binyomin on May 23, 2016.[1] ('08 Case, DE 1). Compulife added David Rutstein as a defendant in an amended complaint filed May 26, 2016. ('08 Case, DE 8). In the '08 case, Compulife alleged that the Rutsteins obtained access to Compulife's transformative database of insurance rate information under false pretenses, and then the defendants used their unauthorized access to earn income from selling insurance leads and insurance policies to customers who visited their websites www.naaip.org and www.beyondquotes.com. See *Compulife I*, 959 F.3d at 1298-99 (describing Compulife's claims against Binyomin and David in the '08 Case).

Compulife filed its verified complaint in the '42 Case on December 2, 2016. ('42 Case, DE 1). The complaint named Binyomin, David, Moses Newman and Aaron Levy. ('42 Case, DE 1). The facts of the second case concern the defendants' "scraping attack" from September 1-4, 2016, that copied Compulife's HTML code for its Website Quoter, and obtained Compulife's trade secret

---

[1] The insurance policy at issue, ran from February 1, 2016 – February 1, 2017. The insurance policy is a claims made policy. The claims in both the '08 Case and '42 Case fell within the policy period.

transformative database of insurance rate information to produce insurance quotes, which defendants' then deployed on their websites www.naaip.org and www.beyondquotes.com and used to sell insurance leads resulting in receipt of override commissions. See *Compulife I,* 959 F.3d at 1299-300 (describing Compulife's claims in the '42 Case related to the scraping attack).

### B.    The Progress of the '08 Case and '42 Case Following Remand in *Compulife I.*

Following this Court's remand in *Compulife I*, a second bench trial was held. The evidence presented at the second bench trial was substantially similar to the evidence at the first trial. The second trial was held by remote video before Magistrate Judge Reinhart from November 16 through November 20, 2020.

Judge Reinhart issued his findings of fact and conclusions of law following the second trial on July 12, 2021. *Compulife Software v. Rutstein*, No. 9:16-CV-80808-REINHART, 2021 U.S. Dist. LEXIS 160881 (S.D. Fla. July 12, 2021). The district court determined that defendants committed trade secret misappropriation in both consolidated cases but did not commit copyright infringement.

On October 20, 2021, the district court entered judgment in favor of Compulife on its trade secret misappropriation claims and awarded damages against Binyomin Rutstein a/k/a Ben Rutstein, David Rutstein a/k/a David Gordon, Moses Newman, and Aaron Levy, jointly and severally, as follows:

1. **Actual damages** for misappropriation of trade secrets in the '08 case on Count IV for violation of the Economic Espionage Act as amended by the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b) ("DTSA"), and Count V for violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.004 ("FUTSA"), and in the '42 case on Count I for violation of the DTSA, and Count V for violation of FUTSA, in favor of the plaintiff and against the defendants jointly and severally pursuant to 18 U.S.C. § 1836(b)(3)(B) and Fla. Stat. § 688.004(1) for the actual loss caused by the misappropriation of the trade secret and the defendants' unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing actual damages in the total amount of **$184,225.87**; and

2. **Exemplary damages** for willful and malicious misappropriation of trade secrets in the '08 case on Count IV for violation of DTSA, and Count V for violation [*3] of FUTSA, and in the '42 case on Count I for violation of the DTSA, and Count V for violation of FUTSA, in favor of the plaintiff and against the defendants jointly and severally pursuant to 18 U.S.C. § 1836(b)(3)(C) and Fla. Stat. § 688.004(2) in the total amount of **$368,451.741** ; and

3. **Prejudgment interest** on the compensatory damage award ($184,225.87) at an annual rate of 5.5% uncompounded beginning on May 23, 2016 and running through March 11, 2018 and restarting on June 19, 2020 running through the date of final judgment.**2** In addition to prejudgment interest, post-judgment interest on the total amount of the judgment shall accrue hereafter according to 28 U.S.C. § 1961; and

4. **A permanent injunction** against defendants Binyomin Rutstein a/k/a Ben Rutstein, David Rutstein a/k/a David Gordon, Moses Newman, and Aaron Levy, their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them, including but not limited to American Web Designers, Ltd. ("AWD") and the National Association of Accredited Insurance Professionals ("NAAIP"), who receive notice by any means reasonably calculated to give actual notice **ARE HEREBY PERMANENTLY RESTRAINED AND ENJOINED** from:

a. copying, duplicating, acquiring, appropriating, misappropriating, scraping, obtaining, using, displaying, or otherwise engaging in any activity directed to obtaining or using, in whole or in part, Compulife's

trade secret compilation of information concerning the term life insurance market, term life products, and term life rates; or

b. conspiring with, receiving revenue from, or profiting from, assisting, aiding or abetting another person or business entity, including but not limited to American Web Designers, Ltd., the National Association of Accredited Insurance Professionals, or any members thereof, or any other person or business entity, in engaging or performing any of the activities enumerated above.

5. **THE COURT ALSO ORDERS THAT** inasmuch as the proof at trial demonstrated that the defendants are in possession of the plaintiff's trade secrets, that defendants have repeatedly misappropriated the plaintiff's trade secrets, and that the misappropriation has continued to date, pursuant to 18 U.S.C. § 1836(b)(3)(A)(ii) and Fla. Stat. § 688.003(3), the Court hereby determines that requiring the defendants to take affirmative actions to protect the plaintiff's trade secrets is appropriate, and therefore HEREBY ORDERS THE DEFENDANTS Binyomin Rutstein a/k/a Ben Rutstein, David Rutstein a/k/a David Gordon, Moses Newman, and Aaron Levy to immediately discontinue the provision of life insurance quoting and quotation services and the use of life insurance quoters on the websites at the domain names www.naaip.org and www.beyondquotes.com, and file a certification with the Court confirming that the provision of life insurance quoting and quotation services and the use of life insurance quoters has ceased at the websites at www.naaip.org and www.beyondquotes.com within five (5) business days of the date of this Final Judgment and Permanent Injunction

*Compulife Software v. Rutstein*, No. 9:16-CV-80808-BER, 2021 U.S. Dist. LEXIS 237232, at *2-5 (S.D. Fla. Oct. 20, 2021).

## C.    The Procedural Posture of the Co-Pending Appeals

Binyomin and his co-defendants David, Aaron Levy, and Moses Newman, appealed the final judgment entered against them after the second trial in both cases. Binyomin is represented by separate counsel paid for by Zurich under the

6

Policy. ('42 Case, DE 407-4 at 9). Those appeals were docketed in this Court as **No. 21-14071** and **No. 21-14074**.

Compulife cross-appealed in both appeals from the district court's adverse judgment on Compulife's copyright infringement claim. The appeals and cross appeals are fully briefed. Oral argument has not been scheduled as of the filing of this brief.

### D.     This Proceeding: The Writ of Garnishment Directed to Zurich

After the judgment was entered in the '42 Case, on November 11, 2021, Compulife requested and obtained a writ of garnishment directed to Zurich as insurer of Binyomin Rutstein under a policy of insurance agent errors and omissions insurance. ('42 Case, DE 337).

### 1.     Zurich's Answer to the Writ and Compulife's Reply

Compulife served Zurich with the writ, and Zurich answered the writ on December 16, 2021. ('42 Case, DE 378). Zurich asserted that "Life Insurance Agents Errors and Omissions Liability Policy No. EOC 5401348-13, issued to The Agents of the Independent Order of Foresters, Members of the Financial Sales Professional Purchasing Group as the named insured for the policy period February 1, 2016 to February 1, 2017, does not afford coverage to Rutstein—or any other defendant in the above-captioned matter—for the final judgment in this matter entered on October 20, 2021." ('42 Case, DE 378 at 2-3).

7

Compulife replied to Zurich's answer on January 12, 2022. ('42 Case, DE 396). Compulife's reply denied the allegations in Zurich's answer. ('42 Case, DE 396 at 2). Compulife affirmatively alleged that Zurich's Life Insurance Agents Errors and Omissions Liability Policy No. EOC 5401348-13, issued to The Agents of the Independent Order of Foresters, Members of the Financial Sales Professional Purchasing Group as the named insured for the policy period February 1, 2016 to February 1, 2017 (the "Policy"), provided coverage to Binyomin because:

> a. The Policy is an errors and omissions policy that provides coverage for a claim that "arises out of a negligent act, error or omission of the 'Insured' in rendering or failing to render 'Professional Services' for others in the conduct of the 'Named Certificate Holder's' profession as an 'Agent;'"
>
> b. Binyomin Rutstein is an Insured under the Policy;
>
> c. Binyomin Rutstein is an Agent under the Policy;
>
> d. Binyomin Rutstein was engaged in Professional Services as an Agent for American Web Designers, Ltd. ("AWD"), a Florida licensed insurance agency and NAAIP;
>
> e. Binyomin Rutstein stood as a principal for AWD;
>
> f. AWD is an "Additional Insured" under the Policy;
>
> g. The Court determined in the Order entered after trial (ECF No. 314 in '08 Case) that "Binyomin gave permission for David [Rutstein] to use Binyomin's insurance license." (ECF No. 314 at 12).
>
> h. The Court determined in the Order entered after trial that "Binyomin Rutstein owned AWD, a licensed insurance agency, which he allowed his father to use to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database. Binyomin allowed his father to use

his insurance license and name to establish insurance-related businesses in violation of the consent decree barring him from the insurance industry." (ECF No. 314 at 42).

4. The acts and omissions committed by Binyomin Rutstein as found by the Court in the Order entered after trial were negligent acts, errors or omissions of Binyomin Rutstein in rendering or failing to render Professional Services.

5. The compensatory damages awarded to Compulife in the total amount of $368,451.74[2] in the Judgment (ECF No. 317) are covered by the Policy and not excluded under any exclusion.

6. The prejudgment interest on the compensatory damages of $184,225.87 awarded to Compulife in the Judgment are covered by the Policy and not excluded under any exclusion.

7. The compensatory damages and pre-judgment interest awarded Compulife in the Judgment entered in this case (ECF No. 317) are "Damages" that the Garnishee is obligated to pay under the Policy.

8. The Policy is subject to garnishment by Compulife for the Judgment under Florida common law.

('42 Case, DE 396 at 2-3).

## 2.    Proceedings on the Writ of Garnishment

Immediately after Compulife filed its reply, and prior to any discovery,

Zurich filed its motion for summary judgment on January 26, 2022. ('42 Case, DE

406). Zurich's motion argued that there was no coverage because (1)

misappropriation of trade secrets is an intentional, not negligent, tort, and,

alternatively, (2) Binyomin Rutstein was not rendering "Professional Services" to

---

[2] Compulife subsequently clarified in its opposition to Zurich's motion for summary judgment that it sought "coverage and garnishment of the Zurich policy only for its actual damages awarded and any interest thereon and no other relief granted by this Court." ('42 Case, DE 396 at 1).

others. ('42 Case DE 406 at 16-18). Zurich's motion also argued that: (1) Compulife's claim was excluded by the intentional act exclusion contained in **Exclusion A** of the Policy; (2) Compulife's claim was excluded under the confidential information exclusion contained in **Exclusion J** of the Policy; and (3) Compulife's claim did not arise out of a negligent act, error or omission committed by Binyomin. ('42 Case, DE 406 at 12-16). Zurich's motion relied entirely upon the district court's findings of fact and conclusions of law entered after the second bench trial in the '42 Case at DE 310.

Compulife initially responded to the motion for summary judgment pursuant to Fed. R. Civ. P. Rule 56(d) by requesting Zurich produce a witness to testify concerning a limited number of discrete topics that Compulife believed it needed information on in order to oppose the motion. ('42 Case, DE 427-1). Zurich disagreed. The parties filed a joint discovery motion setting forth their positions on discovery for the Magistrate Judge. ('42 Case, DE 427). The Magistrate Judge held a hearing and denied Compulife's request to conduct a Rule 30(b)(6) deposition of Zurich without prejudice to Compulife first serving interrogatories on Zurich instead. ('42 Case, DE 428).

Compulife requested and the district court granted extensions to respond to Zurich's motion for summary judgment to permit Compulife to take the deposition of Binyomin and receive Zurich's interrogatory answers. ('42 Case, DE 431, 432).

Compulife took the deposition of Binyomin on April 6, 2022. ('42 Case, DE 439-8).

Thereafter, Compulife responded and opposed Zurich's motion for summary judgment on May 2, 2022. ('42 Case, DE 438). Compulife filed a statement of material facts ('42 Case, DE 439) and attached to it excerpts from the following depositions: 1) the deposition of David in the '08 Case ('42 Case, DE 439-1); 2) the deposition of Aaron Levy in the '42 Case ('42 Case, DE 439-2); 3) the deposition of Moses Newman in the '42 Case ('42 Case, DE 439-3); 4) the deposition of Binyomin in the '08 Case ('42 Case, DE 439-7); and 5) the most recent deposition of Binyomin in the case below ('42 Case, DE 439-7). Compulife also submitted a sworn statement dated December 15, 2016 that Binyomin and David filed with the district court in the '08 Case in response to the court's order on a discovery motion certifying that "Binyomin Rutstein has received a few thousands of dollars of override commissions from a few insurance companies." ('42 Case, DE 439-4). Compulife also submitted excerpts of David's testimony from the first trial and second trial. ('42 Case, DE 439-5, 439-6).

After responding to the motion, Compulife filed a notice of supplemental authority that attached the initial brief Binyomin filed on May 16, 2022 in the appeal currently pending in this Court. ('42 Case, DE 441). In his brief, Binyomin argues that the district court, "erred in finding Binyomin personally liable to

Compulife for misappropriation of trade secrets based on his conduct as the owner of American Web Designers, Ltd. ("AWD") and his permission to allow David Rutstein to use his insurance license in connection with AWD" and that it erred "in imposing joint and several liability against Binyomin for other Defendants' conduct, without comparing the degree of Binyomin's wrong with the degree of wrong committed by other Defendants." ('42 Case, DE 441-1 at 11).

On May 18, 2022, Zurich filed its reply on the motion for summary judgment and its reply to Compulife's statement of facts. ('42 Case, DE 442, 443).

On July 8, 2022, the Court issued a paperless order taking the motion for summary judgment "under advisement" but also setting a hearing for July 20, 2022 at which, "[i]n addition to presenting oral argument on the motion, counsel shall also be prepared to discuss whether the Court should consider 'other materials in the record' (pursuant to Rule 56(c)(3)) and whether the garnishee is entitled to a jury trial in the event the Court find that there are material facts in dispute, thus precluding summary judgment." ('42 Case, DE 449).

The hearing was held as scheduled and the district court heard argument. ('42 Case, DE 452). Thereafter, on July 28, 2022, the district court entered its order granting summary judgment in favor of Zurich and dissolved the writ. ('42 Case, DE 453).

### 3. The District Court's Grant of Summary Judgment to Zurich

On July 28, 2022, the court entered its twenty-two page order granting summary judgment to Zurich (the "Order"). ('42 Case, DE 453).

Before determining the motion, the district court reviewed the relevant provisions of the Policy.

### a) The Policy

The Policy was issued to "The Agents of the Independent Order of Foresters, Members of the Financial Sales Professional Purchasing Group" as the named insured, for the policy period February 1, 2016 to February 1, 2017. Binyomin Rutstein was a certificate holder under the Policy.

The Policy provided coverage for claims that "arise[] out of a negligent act, error or omission of the 'Insured' in rendering or failing to render 'Professional Services' for others in the conduct of the 'Named Certificate Holder's' profession as an 'Agent', 'General Agent', notary public, or 'Registered Representative'." ('42 Case, DE 407-2 at 7).

The Policy defines "Insured", in relevant part, as:

1. The "Named Certificate Holder";
2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned or controlled by the "Named Certificate Holder", and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder"; [or]

13

3. Any person acting on behalf of the "Named Certificate Holder", who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"[.]

('42 Case, DE 407-2 at 9).

As used in the Policy, "Professional Services" includes: "1. The sale, solicitation or servicing of: a. Life Insurance, Accident and Health Insurance, Workers' Compensation Insurance as part of a 24-Hour Accident and Health Insurance product, Disability Income Insurance or Annuities[.]" ('42 Case, DE 407-2 at 19).

**Exclusion A** provides that the policy "does not apply to any 'Claim' "Arising out of any act, error, or omission of the "Insured" committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company [.]" ('42 Case, DE 407-2 at 1).

**Exclusion J** provides that the Policy "does not apply to any 'Claim' . . . [a]rising out of the use of confidential information by an 'Insured', including but

not limited to such use for the purpose of replacement coverage[.]" ('42 Case, DE 407-2 at 14).

### b) The District Court's Findings of Fact and Conclusions of Law Following the Second Trial

In support of its motion, Zurich relied upon five findings of fact after the second trial ('42 Case, DE 310) that referenced Binyomin:

1. "Defendant Binyomin Rutstein, who is David Rutstein's son, is purportedly NAAIP's president, but according to his father, Binyomin never had any involvement in the company." ('42 Case DE 310, ¶ 25)

2. "David Rutstein also founded BeyondQuotes. In 2008, the domain registration for BeyondQuotes.com was in Binyomin Rutstein's name, but it was later owned by David Rutstein." ('42 Case DE ¶ 26) (internal citations omitted).

3. "Binyomin Rutstein is an insurance agent licensed in 35 different states and is currently appointed as an agent by approximately 19 different insurance companies.. Binyomin Rutstein has never sold a life insurance policy." ('42 Case DE 310 at p. 11, fn 14) (internal citations omitted).

4. "American Web Designers, Ltd. ("AWD") is owned by Binyomin Rutstein and is licensed as an insurance agency. To have a license for an insurance agency in Florida, there must be an individual who stands as the principal for that agency; Binyomin Rutstein is the licensed insurance agent in Florida for American Web Designers." ('42 Case DE 310, ¶ 29) (internal citations omitted).

5. Binyomin gave permission for David to use Binyomin's insurance license. David Rutstein opened AWD's bank account with Bank of America by presenting his passport with his photograph as identification and became an authorized signor on that account. ('42 Case DE 310, ¶ 30) (internal citations omitted).

15

In the district court's conclusions of law supporting its finding of "<u>Joint and Several Liability</u>" it analyzed Binyomin's involvement in this case and determined:

> Here, the evidence established that **all four Defendants** were involved in either directly acquiring Compulife's trade secrets or in using these trade secrets for economic gain and/or to the detriment of Compulife. David Rutstein was heavily involved in acquiring Compulife's Transformative Database through misrepresentation and deceit. Mr. Levy and Mr. Moses were directly involved in the scraping attack. **And Binyomin Rutstein owned AWD, a licensed insurance agency, which he allowed his father to use to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database. Binyomin allowed his father to use his insurance license and name to establish insurance-related businesses in violation of the consent decree barring him from the insurance industry.** Each Defendant played a critical role in the enterprise to misappropriate Compulife's trade secrets, and therefore, joint and several liability is appropriate.

('42 Case, DE 310 at 42) (emphasis added).

### c)    Compulife's Citation to Issues of Fact as to the Different and Contradictory Roles Binyomin Played in the Defendants' Scheme Through the Years

David Rutstein's insurance license was revoked in 2012. When David was asked at deposition whether David was involved in any of Binyomin's insurance dealings, David answered "No." ('42 Case, DE 439 SOM ¶ 48). During discovery in the '08 Case, Binyomin and David certified that "Binyomin Rutstein has received a few thousands of dollars of override commissions from a few insurance companies." ('42 Case, DE 439-4). Both answers indicated that Binyomin was, in fact, involved in the sale of insurance because Binyomin's insurance license and Binyomin's ownership of the AWD insurance agency were the keys to allow the

collection of fees and override commissions obtained from the sale of insurance to insurance leads generated by Compulife's stolen data and code.

As the one with the insurance license, Binyomin had to be involved in some way, if only in an oversight role. After Binyomin admitted he "received a few thousands of dollars of override commissions from a few insurance companies," David certified in a declaration that "Binyomin has no information on anything related to NAAIP software or website. David has no information related to NAAIP software or website."  ('42 Case, DE 439 SOM ¶ 52). When David took the stand at the first trial, he answered in the negative when asked whether "Ben [Binyomin] had any involvement with NAAIP.org or American Web Designers." ('42 Case, DE 439 SOM ¶ 53). David later testified that he (David) was using Binyomin's insurance license from American Web Designers and NAAIP.org. ('42 Case, DE 439 SOM ¶¶ 54-55).

At the second trial, David testified again that Binyomin had "no involvement" in NAAIP.org. ('42 Case, DE 439 SOM ¶ 56). He answered in the negative when asked whether Binyomin was involved in creating any websites, or negotiating contracts. ('42 Case, DE 439 SOM 56). David testified he had permission to use Binyomin's license, and in connection with American Web Designers. ('42 Case, DE 439 SOM ¶ 56).

17

At Aaron Levy's deposition taken on August 23, 2017, when asked about what Binyomin did for AWD, NAAIP and BeyondQuotes, Levy answered "he doesn't really work with us" and said that Binyomin was not involved. ('42 Case, DE 439 SOM ¶ 49).

At Moses Newman's deposition taken on June 15, 2017, Mr. Newman testified "I understand Binyomin's involvement with NAAIP was through AWD" "and that "I don't know if he's an actual principal in the principal in the Web Designers of America … my understanding was that he was the broker of record of and all the moneys were going to him and then being distributed accordingly for payroll and such." ('42 Case, DE 439 SOM ¶ 50).

Binyomin's testified in the '08 Case that he was not involved in the operations of NAAIP, and that he did not understand his father's involvement with NAAIP. ('42 Case, DE 439 SOM ¶¶ 59,60). When asked about the other co-defendants Aaron Levy and Moses Newman's specific involvement with NAAIP, he claimed he did not know what their roles were. ('42 Case, DE 439 SOM ¶ 61).

On April 6, 2022, Binyomin's deposition was again taken in this garnishment proceeding. He testified that he was involved in the schemes underlying the '08 Case and '42 Case only to the extent of "providing the insurance license" but "[n]ot in the work of it." ('42 Case, DE 439 SOM ¶ 79). Binyomin testified that he was "like an employee" of AWD. ('42 Case, DE 439

18

SOM ¶ 73). He testified that his father David owned AWD, that he stopped working for AWD in 2010, and that he did not recall whether he ever sold life insurance for AWD. ('42 Case, DE 439 SOM ¶¶ 73, 74, 75). But he also acknowledged that in 2013, he went to a bank with David "to open a bank account [for AWD] and then [David] took it over." ('42 Case, DE 439 SOM ¶ 76).

Binyomin came to learn about One Resource Group, the company that paid the majority of the override commissions, "… around the time the lawsuit started." ('42 Case, DE 439 SOM ¶ 77). Binyomin acknowledged that AWD received override commissions on life insurance policies sold with his license, but Binyomin said he never received payments for any override commissions paid to AWD by One Resource Group. ('42 Case, DE 439 SOM ¶ 81). When asked about whether he had any business involvement with his father in 2016, Binyomin answered "I still didn't get involved." ('42 Case, DE 439 SOM ¶ 80).

Binyomin testified that he canceled his insurance license this year, stating that "I'm not in the insurance business." ('42 Case, DE 439 SOM ¶ 69).

### d)    The District Court's Refusal to Consider Facts Requiring Credibility Determinations

The district court noted that Zurich relied extensively on the court's prior Findings of Fact and Conclusions of Law from the bench trial of the consolidated cases. ('42 Case, DE 453 at 16). The court reasoned that when it sat as fact finder at the bench trial, the court was able to assess credibility. But on Zurich's motion

for summary judgment, the court stated "I cannot assess credibility and I must view the evidence and its inferences in the light most favorable to Compulife. So what matters are the underlying facts, not my prior findings." *Id.*

> ### e)    The District Court's Determination of No Coverage that Contradicted its Findings of Fact and Conclusions of Law in the '08 Case and '42 Case

The district court determined in the Order that there was no coverage under the insuring agreement in the Policy

> because no qualifying "Professional Services" were being provided. The undisputed material facts show that Binyomin Rutstein was not engaged in the "sale, solicitation, or servicing" of insurance products through AWD when the acts giving rise to the putative insurance claim arose. He testified that he ceased working for AWD in 2010. He gave contradictory testimony about whether he had sold insurance through AWD prior to ceasing his work there. The Pretrial Stipulation and Binyomin Rutstein's 2016 deposition say that he never sold any life insurance. He testified in a 2022 deposition that he sold insurance through AWD "for a little bit" in 2010 or 2011. Any inconsistency is not material because the first act of misappropriating Compulife's trade secrets occurred in August 2011, when David Rutstein obtained Compulife's HTML code. ECF No. 310 at n.15 (citing DX 1). So, at the time of the conduct underlying the Final Judgment, Binyomin Rutstein was not engaged in the "sale, solicitation or servicing" of insurance. In fact, there are no facts in the record that AWD (through Binyomin Rutstein or otherwise) sold, solicited, or serviced insurance for others after 2010.
>
> The undisputed material facts also show that, between August 2011 and April 2015, Binyomin Rutstein's only involvement with AWD was to hold the insurance license and to provide digital marketing and web design services. Merely putting one's name on an insurance license, without more, is not the "sale, solicitation or servicing" of insurance for others, nor is it engaging in the profession of being an insurance agent. Therefore, Binyomin Rutstein is not

entitled to coverage under the Policy for the conduct underlying the
Final Judgment.

('42 Case, DE 453 at 17-18).

Zurich separately argued in its motion that there was no coverage because

Binyomin's conduct was intentional not negligent. The district court agreed.

The Policy provides coverage only for "a negligent act, error or
omission of the 'Insured.'" The Policy defines "Insured" as either (1)
the certificate holder (here, Binyomin Rutstein), (2) any business
entity "owned or controlled" by the certificate holder that engages in
"Professional Services", but only with respect to "Professional
Services" provided by the certificate holder, and (3) any person acting
on behalf of the certificate holder with respect to "Professional
Services" provided by the certificate holder. Here, I have determined
that the undisputed facts show that Binyomin Rutstein was not
providing "Professional Services" during the relevant time period. So,
no business entity or other person falls under the definition of
"Insured."

The undisputed facts in the record, when viewed in the light
most favorable to Compulife, are that the defendants other than
Binyomin Rutstein were personally and directly involved in
misappropriating Compulife's trade secrets. The undisputed facts
about Binyomin Rutstein are: (1) that the insurance license for AWD
was in Binyomin Rutstein's name, (2) that Binyomin Rutstein had no
operational involvement in AWD or NAAIP, other than web design
and digital marketing, (3) that David Rutstein effectively operated
AWD even though David Rutstein was legally prohibited from
holding an insurance license, (4) that Binyomin Rutstein knew David
Rutstein was using his insurance license, and (5) that by holding an
insurance license AWD was able to receive override commissions
from One Resource Group in return for leads generated through
NAAIP.

('42 Case DE 453 at 18-19).

With respect to Zurich's argument that **Exclusion A** applied to exclude Compulife's claim, the district court disagreed.

> The undisputed material facts are (1) that the insurance license for AWD was in Binyomin Rutstein's name, (2) that Binyomin Rutstein had no operational involvement in AWD or NAAIP, other than web design and digital marketing, (3) that David Rutstein effectively operated AWD even though David Rutstein was legally prohibited from holding an insurance license, (4) that Binyomin Rutstein knew David Rutstein was using his insurance license, and (5) that by holding an insurance license AWD was able to receive override commissions from One Resource Group in return for leads generated through NAAIP. Although it is a close question, viewing this evidence in the light most favorable to Compulife, I find that Zurich has not met its burden of showing that Binyomin Rutstein acted with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent.

('42 Case DE 453 at 20-21).

With respect to Zurich's argument that **Exclusion J** applied to exclude Compulife's claim, the district court also disagreed.

> Exclusion J says that Zurich has no duty to indemnify any claim "[a]rising out of the use of confidential information by an 'Insured.'" As discussed above, the only "Insured" under the Policy is Binyomin Rutstein. Viewing the undisputed facts in the light most favorable to Compulife and not making any credibility findings, I find that Zurich has not met its burden of showing that it is entitled to judgement as a matter of law on Exclusion J. Without drawing adverse inferences from other witness' testimony and other evidence (which I cannot do at this stage), there is insufficient evidence that Binyomin Rutstein personally used Compulife's confidential information.

('42 Case DE 453 at 21).

Compulife filed its notice of appeal on August 29, 2022. ('42 Case, DE 454).

### 4.    Zurich's Motion for Attorneys' Fees

On September 26, 2022, Zurich filed its motion for attorneys' fees seeking recovery of its full attorneys' fees and costs incurred pursuant to § 77.28, Florida Statutes. ('42 Case, DE 458). In support of Zurich's motion it attached heavily redacted invoices for the fees of four separate attorneys. ('42 Case, DE 458). Zurich also filed a motion for leave to submit its redacted invoices for attorneys' fees to the district court *in camera* without providing them to Compulife. ('42 Case, DE 457).

Compulife opposed the motion for attorneys' fees and costs. ('42 Case, DE 461). Compulife also opposed the motion to permit Zurich to submit its fee invoices *in camera*. ('42 Case, DE 462). Zurich filed a reply. ('42 Case, DE 463).

On November 10, 2022, the district court issued an order on the motion for attorneys' fees that granted Zurich entitlement to fees, but denied Zurich's motion without prejudice as to amount, and denied its motion for *in camera* review of its attorney invoices without prejudice. ('42 Case, DE 467). The district court adopted Zurich's proposal that it defer ruling on the motion for leave or the amount of Zurich's fees until after this appeal. ('42 Case, DE 467 at 7). As a result, any appeal of a fee award against Compulife below will need to await this appeal since the fee award will not be final until an amount is determined and reduced to judgment.

## IV.    STANDARD OF REVIEW

Review of the district court's grant of summary judgment is *de novo*, considering all the evidence and factual inferences in the light most favorable to the non-moving party. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232 (11th Cir. 2010) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009)).

"Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952–53 (11th Cir. 1986).  Indeed, "[s]ummary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. *Id.* If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

## V.    SUMMARY OF THE ARGUMENT

This Court should vacate the district court's grant of summary judgment and remand for trial for three reasons.

*First*, there are material issues of fact for trial whether Binyomin committed omissions in his performance of professional services when he allowed his

insurance license and AWD insurance agency to be used by his father and co-defendants. The Policy covered Binyomin's negligence in connection with the sale and solicitation of insurance. But for Binyomin's insurance license and AWD agency, the defendants would not have earned $184,225.87 override commissions and referral commissions using Compulife's data and software code. Binyomin's insurance license was central to the defendants' success in profiting from their scheme.

*Second*, questions of fact remain whether Binyomin was negligent in allowing his father to use Binyomin's insurance license and AWD insurance agency.  The district court determined as a matter of law that Binyomin was reckless. This determination was one for the trier of fact to make taking witness credibility into account. The determination on summary judgment was improper.

*Third*, the district court's findings after trial included findings that Binyomin Rutstein caused Compulife to suffer damages in the amount of $184,225.87, which was the amount of override commissions and referral commissions paid to the defendants using Binyomin's insurance license. Binyomin also admitted under oath that "Binyomin Rutstein has received a few thousands of dollars of override commissions from a few insurance companies." These facts, combined with Binyomin's failure to supervise his father, were sufficient to create an issue of

25

material fact requiring a trial on whether the Policy provided coverage for Compulife's claim based upon "a negligent act, error or omission" of Binyomin.

## VI.    ARGUMENT

### A.    MATERIAL ISSUES OF FACT CONCERNING BINYOMIN'S INVOLVEMENT IN AWD—BINYOMIN'S INSURANCE AGENCY THAT FACILITATED THE PAYMENT OF OVERRIDE COMMISSIONS BY ORG—SHOULD HAVE PRECLUDED SUMMARY JUDGMENT

The district court's determination of no coverage is totally inconsistent with its determination in the '08 Case and '42 Case that Binyomin's liability was joint and several with the other defendants who participated in the scheme during the Policy period that caused Compulife to suffer compensatory damages of $184,225.87.

The district court found after trial in the '08 Case and '42 Case that "Binyomin Rutstein owned AWD, a licensed insurance agency, which he allowed his father to use to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database," and that finding contradicts its finding in this case that Binyomin was not "personally and directly involved in misappropriating Compulife's trade secrets" and therefore the Policy does not apply.

The material facts presented below showed that Binyomin did indeed allow his father to use AWD and Binyomin's insurance license to earn $184,225.87 in

override commissions on the sale of life insurance policies. The material facts also showed that those sales were facilitated and made possible by the scheme to use Compulife's data and software code on www.BeyondQuotes.com and www.NAAIP.org.

The district court's findings of fact and conclusions of law after trial determined that AWD—Binyomin's insurance agency insured by Zurich for errors and omissions under the Policy because Binyomin was the appointed agent—was used to earn a profit from Compulife's software and data.

> 29. American Web Designers, Ltd. ("AWD") is owned by Binyomin Rutstein and [*16] is licensed as an insurance agency. (Vol. 4, 134:21-22, 135:14-16, 177:14-23). To have a license for an insurance agency in Florida, there must be an individual who stands as the principal for that agency; Binyomin Rutstein is the licensed insurance agent in Florida for American Web Designers. (Vol. 1, 146:11-18, PX 564).
>
> 30. Binyomin gave permission for David to use Binyomin's insurance license. (Vol. 4, 194:10-14). David Rutstein opened AWD's bank account with Bank of America by presenting his passport with his photograph as identification and became an authorized signor on that account. (Vol. 4, 137:14-138:25, PX 106).
>
> 31. Brian McSweeney is an insurance agent with MBM Life Quotes, Inc. See McSweeney 2017 Trial Tr. 168:13-20 (PX 569). MBM Life Quotes was a Compulife customer with a license for the PC version of Compulife's software and access to its web quoter. (Vol. 3, 72:16-73:3).
>
> 32. In August 2011, David Rutstein used AWD to enter into an agreement with Brian McSweeney whereby for every lead Mr. McSweeney received that became a sale of an insurance policy, a "lead generation fee" was paid to AWD. (Vol. 4, 180:4-181:11; PX 28). Mr. McSweeney paid Defendants over $75,819.00 in exchange

[*17]  for sales leads that Defendants provided to Mr. McSweeney (generated from BeyondQuotes.com) while Compulife's software and data were used on the website. (PX 569 at 218:6-10, PX 30).

\*\*\*

37. One Resource Group ("ORG") is a life insurance wholesaler that entered into an agreement with AWD dated March 24, 2014. (PX 42). Pursuant to the agreement, ORG paid AWD $108,406.87 in commissions from sales of insurance policies by NAAIP.org members during the period of time that NAAIP used Compulife's software and data. (Vol. 1, 148:1-12, PX 43). David Rutstein confirmed that NAAIP.org received that approximate amount from ORG over a two-to-three-year period. (Vol. 4, 191:3-12).

('42 Case, DE 310 at 12-14).

Yet despite the district court's prior determinations after trial in the '08 Case and '42 Case that Binyomin was involved, when the district court ruled on Zurich's motion it refused to consider those determinations and instead found that Binyomin was not involved.

The undisputed material facts also show that, between August 2011 and April 2015, Binyomin Rutstein's only involvement with AWD was to hold the insurance license and to provide digital marketing and web design services. Merely putting one's name on an insurance license, without more, is not the "sale, solicitation or servicing" of insurance for others, nor is it engaging in the profession of being an insurance agent.

('42 Case, DE 453 at 18).

Binyomin's involvement was far more significant than merely "putting one's name on an insurance license."[3] Life insurance policies were sold. The sale of

---

[3] Of course, one does not put one's own name on an insurance license. Insurance licenses are issued by the state after an application, background check, and an

those policies were facilitated by the use of Compulife's data and software. Override commissions were paid based on the sale of those policies. Those override commissions were paid to AWD and AWD had to be involved in order to receive override commissions on the sale of those policies because only licensed insurance agents can be paid commissions on the sale of insurance policies. The payment of commissions to insurance agents occurs because insurance agents, like Binyomin here, are engaged in the "sale, solicitation or servicing" of insurance.

The evidence showed that Zurich's Policy covered damages caused to Compulife that resulted from errors and *omissions* Binyomin committed by not controlling the use of his insurance license. The district court found that the defendants profited to the tune of $184,225.87 from the use of Binyomin's insurance license in combination with Compulife's code and data.

The district court's justification for its inconsistency not being "material because the first act of misappropriating Compulife's trade secrets occurred in August 2011" simply does not hold water. Even if the first act occurred prior to the inception of the Policy, the undisputed facts show that the scheme continued and that during the period that the Policy was in force both the claims in the '08 Case

---

exam demonstrating proficiency in insurance. See Fla. Stat. § 626.171. Insurance licenses must be maintained, renewed, and supported with continuing education credit. Fla. Stat. § 626.2815. Binyomin's possession of an insurance license was not merely trivial, it was consequential and the reason why his insurance agency, AWD, was entitled to collect override commissions on the sale of life insurance.

and '42 Case were made against Binyomin by Compulife for damage it suffered as a result of the use of Compulife's data and software to sell life insurance policies that Binyomin's agency AWD earned override commissions on.

Binyomin admitted he profited from the use of his insurance license and AWD when he filed a sworn statement with the court in the '08 Case on December 15, 2016 certifying that "Binyomin Rutstein has received a few thousands of dollars of override commissions from a few insurance companies." ('42 Case, DE 439-4). Binyomin's sworn statement contradicts Binyomin's answer at his most recent deposition to the question "Have you ever received payments for any override commissions paid to AWD by One Resource Group?" to which he responded "No." ('42 Case, DE 439 ¶ 82) (61: 9-12). That contradiction alone was enough to create an issue of fact precluding summary judgment. See *Ilias v. USAA Gen. Indem. Co.*, No. 21-12486, 2023 WL 2487329, at *10 (11th Cir. Mar. 14, 2023) (reversing trial court's entry of summary judgment because factual issues remained as to whether insurer acted in bad faith); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.")

Was Binyomin involved or not involved? Did Binyomin profit or not from the use of his insurance license? The district court's findings of fact and conclusions of law indicate Binyomin was involved enough and it strains credulity to think that the district court would hold Binyomin liable to Compulife if Binyomin was not involved at all. The fact that Binyomin "received a few thousands of dollars of override commissions from a few insurance companies" ('42 Case, DE 439-4), should have been enough to create issues of fact for a jury. That involvement should have been enough to warrant a trial. Without an insurance license, Binyomin could not have received any override commissions at all. This and other inconsistent facts should have been enough to send the entire issue of coverage for "professional services" under the policy to a jury and compel the denial of summary judgment.

## B.     MATERIAL ISSUES OF FACT CONCERNING WHETHER BINYOMIN WAS MERELY NEGLIGENT OR ACTED RECKLESSLY SHOULD HAVE PRECLUDED SUMMARY JUDGMENT

Whether Binyomin was negligent or reckless with his insurance license was also a disputed issue of fact that precluded summary judgment. The Policy provides that Zurich shall pay for any claims "arising out of a negligent act, *error or omission* of the 'insured' in rendering or failing to render 'Professional Services' for others in the conduct of the 'Named Certificate Holder's' profession as an 'Agent,' 'General Agent' notary republic, or 'Registered Representative[.]'"

('42 Case, DE 407-2 at 7) (emphasis added). Binyomin's error or omission was his failure to control the use of his insurance license and his AWD insurance agency. Binyomin's failure to control his license and his insurance business allowed the defendants to operate websites that earned them $184,225.87 in override commissions and referral fees using Compulife's data and software code. Binyomin's insurance license was essential; the agreements AWD entered into under Binyomin's signature with the companies that paid the override commissions and referral fees required a licensed agent to receive those commissions. ('42 Case, DE 307-7).

The district court improperly assumed the role of the fact finder when it decided that Binyomin's failure to control or monitor the use of his insurance license—use that he may have never even known was going on at the time—was not negligent, but reckless. Whether Binyomin was negligent or reckless was an issue for the jury to determine and summary judgment should have been denied when viewing the evidence in the light most favorable to Compulife. Instead, the court improperly made a legal determination that Binyomin acted recklessly based upon the following recitation of what the district court claimed were the undisputed facts:

> The undisputed facts about Binyomin Rutstein are: (1) that the insurance license for AWD was in Binyomin Rutstein's name, (2) that Binyomin Rutstein had no operational involvement in AWD or NAAIP, other than web design and digital marketing, (3) that David

Rutstein effectively operated AWD even though David Rutstein was legally prohibited from holding an insurance license, (4) that Binyomin Rutstein knew David Rutstein was using his insurance license, and (5) that by holding an insurance license AWD was able to receive override commissions from One Resource Group in return for leads generated through NAAIP.

('42 Case, DE 453 at 19).

Change the district court's facts only slightly in favor of Compulife and it

becomes obvious that the district court should have left the fact finding for a trial:

The undisputed facts about Binyomin Rutstein are: (1) that the insurance license for AWD was in Binyomin Rutstein's name, (2) that Binyomin Rutstein had no *operational* involvement in AWD or NAAIP, other than web design and digital marketing, (3) that David Rutstein effectively operated AWD even though David Rutstein was legally prohibited from holding an insurance license, (4) that Binyomin Rutstein ~~knew~~ should have known that David Rutstein was using his insurance license to collect override commissions paid to AWD for the sale of insurance, and (5) that by using Binyomin Rutstein's ~~holding an~~ insurance license AWD was able to receive override commissions from One Resource Group in return for leads generated through NAAIP.

(*italics* for emphasis; ~~strikethrough~~ to show removal; underline to show addition).

If the facts above are swapped for the district court's facts then summary

judgment is denied. Binyomin's *operational* involvement with AWD is irrelevant

because the use of Binyomin's insurance license was what mattered for it to collect

override commissions, not its operations. While Binyomin should have known his

license was being used to sell policies and earn override commissions, as long as

Binyomin, the licensed insurance agent, was involved in some fashion then the

damage to Compulife arose out of an "*error or omission* of the 'insured' in rendering or failing to render 'Professional Services' for others."

Generally, the particular standard of care which a defendant is judged against in a given case is a factual matter for the jury. *Ave. Clo Fund, Ltd. v. Sumitomo Mitsui Banking Corp.*, 723 F.3d 1287, 1300 (11th Cir. 2013) (determining that the "existence or nonexistence of gross negligence" under New York law is a question for the jury). It was wrong for the district court to determine recklessness on summary judgment.

> While "the term recklessness is not self-defining," the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); see Prosser and Keeton § 34, at 213–214. The Restatement, for example, defines reckless disregard of a person's physical safety this way:
>
> > "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement (Second) of Torts § 500, p. 587 (1963–1964).
>
> It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law. See Prosser and Keeton § 34, at 213 (recklessness requires "a known or obvious risk that was so great as to make it highly probable that harm would follow").

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007) (footnote omitted).

Why the district court believed Binyomin's acts rose beyond negligence to the level of recklessness was not explained. The issue should have been decided by a fact finder on these disputed facts. On *de novo* review, this Court should vacate, reverse and remand for trial.

### C.   THE DISTRICT COURT'S FINDINGS AFTER TRIAL COMBINED WITH BINYOMIN'S ADMISSION TO RECEIVING OVERRIDE COMMISSIONS CREATED MATERIAL ISSUES OF FACT FOR TRIAL

This Court's recent decision in *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing To Pol'y No. 187581*, 56 F.4th 1280, 1290 (11th Cir. 2023) is instructive. There this Court reversed the district court's grant of summary judgment to an insurer in a coverage dispute where the insured yacht was destroyed by Hurricane Dorian. The insurer argued that there was no coverage because the company managing the  yacht did not employ a full-time licensed captain in violation of the policy's "Captain Warranty," and the insurer offered expert testimony to show that the failure to provide a full-time licensed captain "increased the hazard to the yacht because a licensed captain would have operated the vessel back to Florida when Hurricane Dorian formed and was forecast to hit the Bahamas." *Id.* at *1282.

Reversing and remanding the district court's summary judgment, this Court determined that notwithstanding the defendants' expert's opinion, a disputed

question of material fact precluding summary judgment existed whether the owner's failure to employ a full-time licensed captain increased the hazard posed to the vessel. The reason came down to credibility determinations. "A jury may well credit Captain Danti's testimony over the weather reports offered by [plaintiff]. But that is a credibility determination for the jury to make." *Id.* at *1290.

Binyomin's credibility was challenged. Binyomin testified that he was involved and also testified he was not involved. Binyomin admitted he "received a few thousands of dollars of override commissions from a few insurance companies" ('42 Case, DE 439-4), but the district court disregarded this statement and, in the process, made a credibility determination about it. The district court made other credibility determinations that created issues of fact for a jury. The district court correctly recognized that credibility determinations were off limits on summary judgment, but he went ahead and made them anyway.

## VII.   CONCLUSION

The court's entry of summary judgment in favor of Zurich should be vacated and the case remanded for trial.


DATED: March 20, 2023          Respectfully submitted,

                               */s/ Joel B. Rothman*
                               JOEL B. ROTHMAN
                               Florida Bar Number:  98220

joel.rothman@sriplaw.com
LAYLA T. NGUYEN
Florida Bar Number:  1024723
layla.nguyen@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Attorneys for Plaintiff/Garnishor-Appellant,*
*Compulife Software Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☒      this document contains 9013 words, **or**

☐      this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

☒      this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 font in Times New Roman type font, **or**

☐      this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN

38

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive notices of filing electronically.

By: */s/ Joel B. Rothman*
JOEL B. ROTHMAN