CASE NO. 22-12909
_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**
_____

COMPULIFE SOFTWARE INC.,

*Plaintiff/Garnishor – Appellant*,

v.

ZURICH AMERICAN INSURANCE COMPANY,

*Garnishee – Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
District Court Case No. 9:16-CV-81942
_____

**APPELLEE'S ANSWER BRIEF**
_____

Tory M. Bishop
KUTAK ROCK LLP
1650 Farnam St.
The Omaha Building
Omaha, NE 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
tory.bishop@kutakrock.com

*Attorneys for Appellee Zurich American Insurance Company*

**CERTIFICATE OF INTERESTED PARTIES
AND CORPORATE DISCLOSURE**

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1.  Bishop, Tory M., Esq.

2.  Compulife Software, Inc.

3.  Friedman, Allison L., Esq.

4.  Friedman, Allison L., P.A.

5.  Kutak Rock LLP

6.  McCarthy, Brooke H., Esq.

7.  Nguyen, Layla T., Esq.

8.  Reinhart, Bruce E. (Magistrate Judge)

9.  Rothman, Joel B., Esq.

10. Rutstein, Binyomin

11. Schneider, Jerold I., Esq.

12. SRIPLAW, P.A.

13.    Sugg, Caleb S., Esq.

14.    Wirth, Craig A., Esq.

15.    Zurich American Insurance Company (a wholly owned subsidiary of Zurich Holding Company of America, Inc.)

16.    Zurich Holding Company of America, Inc. (a Delaware corporation, wholly owned by Zurich Insurance Company Ltd.)

17.    Zurich Insurance Company Ltd. (a Swiss corporation, directly owned by Zurich Insurance Group Ltd.)

18.    Zurich Insurance Group Ltd. (a Swiss corporation, which is the only publicly traded parent company with a listing on the Swiss stock exchange under the ticker symbol "ZURN" and a further trading of American Depositary Receipts).

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument would not significantly assist the Court in rendering a decision on the issues in this appeal, which are not particularly unique or complex. The parties' briefs and the record below should sufficiently inform the Court of the issues and the parties' arguments so as to render oral argument unnecessary.

## TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE..................................................................2
   (i)   Course of Proceedings and Disposition ..............................2
   (ii)  Statement of Facts ..........................................................4
        (A)   Policy..........................................................................4
        (B)   Compulife's Trade Secret Dispute with Defendants ...............8
        (C)   Zurich's Coverage Position......................................11
        (D)   The District Court's July 2021 Findings of Fact and Conclusions of Law ................................................11
        (E)   Zurich's Supplemental Coverage Position ..........................14
        (F)   Garnishment Proceedings .......................................14
        (G)   Summary Judgment Proceedings..........................15
   (iii)  Standard of Review ........................................................18

SUMMARY OF THE ARGUMENT .....................................................19

ARGUMENT .........................................................................................21
   I.    The District Court Properly Granted Zurich's Summary Judgment Motion Because the Claim Against Binyomin Rutstein Did Not Arise out of a Negligent Act, Error, or Omission in Rendering or Failing to Render Professional Services for Others ................................................................21

   II.   The District Court's Grant of Summary Judgment to Zurich Should Be Affirmed for the Additional Reason Exclusion A of the Policy Applies to Exclude Coverage for the Judgment ...............28

   III.  The District Court's Grant of Summary Judgment to Zurich Should Be Affirmed for the Additional Reason Exclusion J of the Policy Applies to Exclude Coverage for the Judgment ...............33

   IV.  The Authorities Upon Which Compulife Relies in the Opening Brief Are Inapposite, and the "Factual Disputes" it Contends Preclude Summary Judgment are Immaterial and Irrelevant to Coverage Under the Policy ...............................................................35

A.    The Eleventh Circuit Case Compulife Contends is "Instructive" is Irrelevant and Inapposite ................................35

B.    The "Factual Disputes" Addressed in Compulife's Opening Brief are Either Irrelevant or Were Previously Resolved by the District Court in the Judgment Upon Which Compulife Seeks to Collect.........................................38

CONCLUSION .......................................................................................43

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins.*,
  32 F. Supp. 3d 1226 (S.D. Fla. 2014) ...............................................29
*Compulife Software, Inc. v. Binyomin Rutstein et al.*,
  No. 9:16-CV-80808-RLR (S.D. Fla.) .................................................2
*Compulife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) ..............................................10, 19
*Denman v. Gen. Star Nat'l Ins. Co.*,
  No. 11-24086-CIV-MARTINEZ-MCALILEY,
  2012 WL 13014689 (S.D. Fla. July 23, 2012) .................................24
*Ellis v. England*,
  432 F.3d 1321 (11th Cir. 2005) ......................................................19
*Fannin v. United Space All., LLC*,
  392 F. App'x 788 (11th Cir. 2010) .................................................19
*Feliciano v. City of Miami Beach*,
  707 F.3d 1244 (11th Cir. 2013) ......................................................18
*Fid. Nat'l Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc.*,
  No. 3:07CV278/MCREMT, 2010 WL 1911159
  (N.D. Fla. May 12, 2010)................................................................26
*Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  143 F. Supp. 3d 1283 (S.D. Fla. 2015), *aff'd sub nom.*, *Stettin v.
  Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335
  (11th Cir. 2017)..............................................................................34
*Great Am. Ins. Co. v. Barrett*,
  No. 8:06-cv-1405-T-24-TGW, 2007 WL 9723861
  (M.D. Fla. June 28, 2007)...............................................................29
*Ilias v. USAA Gen. Indem. Co.*,
  No. 21-12486, 2023 WL 2487329 (11th Cir. Mar. 14, 2023) ...........37
*J.B.D. Constr., Inc. v. Mid–Continent Cas. Co.*,
  571 Fed. App'x. 918 (11th Cir. 2014) (per curiam) .........................26
*Johnson v. Bd. of Regents of Univ. of Ga.*,
  263 F.3d 1234 (11th Cir. 2001) ......................................................18
*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
  920 F.3d 704 (11th Cir. 2019) .............................................. 18-19, 28

*LaFarge Corp. v. Travelers Indem. Co.*,
   118 F.3d 1511 (11th Cir. 1997) ........................................................22
*Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*,
   228 F. Supp. 3d 1313 (S.D. Fla. 2017), *aff'd*, 713 F. App'x 951
   (11th Cir. 2017).................................................... 26-27, 38, 41
*O'Brien v. Transamerica Premier Life Ins. Co.*,
   745 F. App'x 349 (11th Cir. 2018) .................................................18
*Parks v. City of Warner Robins*,
   43 F.3d 609 (11th Cir. 1995) ...........................................................19
*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)............................................................... 37-38
*Serendipity at Sea, LLC v. Underwriters at Lloyd's of London*
   *Subscribing to Policy No. 187581*,
   56 F.4th 1280 (11th Cir. 2023) ............................................... 35-37
*Southern-Owners Ins. Co. v. Fla. Constr. Servs., Inc.*,
   569 F. Supp. 3d 1186 (M.D. Fla. 2021), *reconsideration denied*,
   No. 8:20-CV-1706-WFJ-TGW, 2021 WL 6884309
   (M.D. Fla. Dec. 17, 2021)..............................................................22
*Stephens v. Mid-Continent Cas. Co.*,
   749 F.3d 1318 (11th Cir. 2014) ............................................25, 38, 41
*Waldman v. Conway*,
   871 F.3d 1283 (11th Cir. 2017) .....................................................19
*Westport Ins. Corp. v. L. Offs. of Gerald J. Lindor, P.A.*,
   No. 08-61644-CIV, 2009 WL 722254 (S.D. Fla. Mar. 18, 2009)............... 28-29

## STATE CASES

*U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*,
   930 So. 2d 686 (Fla. Dist. Ct. App. 2006)........................................... 26-27, 38

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ...............................................34
11th Cir. R. 28-5 ..............................................................................2
11th Cir. R. 32-4 ............................................................................44
Fed. R. App. P. 32(a)(5)...................................................................44
Fed. R. App. P. 32(a)(6)...................................................................44
Fed. R. App. P. 32(a)(7)(b).............................................................44
Fed. R. App. P. 32(a)(7)(B)(iii) .......................................................44

Fed. R. Civ. P. 56(a)...........................................................................18, 36

Cambridge Dictionary,
   https://dictionary.cambridge.org/us/dictionary/english/confidential
   (last visited Apr. 17, 2023) ..................................................................34

## STATEMENT OF THE ISSUES

I.    Whether the District Court properly granted Zurich American Insurance Company's ("Zurich") Motion for Summary Judgment on the ground there is no coverage under Zurich's insurance policy ("Policy") for the judgment ("Judgment") against Binyomin Rutstein because the claim from which the Judgment resulted did not arise out of a negligent act, error, or omission by Binyomin Rutstein in rendering or failing to render "Professional Services" for others.

II.    Whether the District Court's grant of summary judgment to Zurich should be affirmed on the alternative ground Exclusion A of the Policy—which excludes coverage for claims "[a]rising out of any act, error, or omission of the 'Insured' committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent"—applies to exclude coverage for the Judgment against Binyomin Rutstein.

III.    Whether the District Court's grant of summary judgment in favor of Zurich should be affirmed on the alternative ground Exclusion J of the Policy—which excludes coverage for claims "[a]rising out of the use of confidential information by an 'Insured'"—applies to exclude coverage for the Judgment against Binyomin Rutstein.

1

## STATEMENT OF THE CASE

**(i)    Course of Proceedings and Disposition**

This matter arose from a dispute between Appellant Compulife Software, Inc. ("Compulife"), Binyomin Rutstein, and Binyomin Rutstein's co-defendants (together with Binyomin Rutstein, "Defendants"), stemming "from Defendants' alleged theft of Compulife's intellectual property." (Doc. 310, Pg. 1).[1] Compulife filed two lawsuits in connection with its intellectual property dispute with Defendants, which were subsequently consolidated: (a) *Compulife Software, Inc. v. Binyomin Rutstein et al.*, No. 9:16-CV-80808-RLR (S.D. Fla.); and (b) *Compulife Software, Inc. v. Moses Newman et al.*, No. 9:16-CV-81942-RLR (S.D. Fla.) (together, "Suits").

On July 12, 2021, following a bench trial, the District Court entered an order ("July 2021 Order") finding Defendants—including Binyomin Rutstein—liable for misappropriation of Compulife's trade secrets and awarding damages to Compulife. (Doc. 310, Pg. 45; Doc. 453, Pg. 12 ¶ 25). In the July 2021 Order, the District Court determined "Defendants acted willfully and maliciously in misappropriating

---

[1] Pursuant to 11th Cir. R. 28-5, record references to pleadings and other court papers have been made by referring to the document number and page number within the document. The abbreviation "Doc." stands for the document number as shown on the United States District Court for the Southern District of Florida's docket sheet for the suit styled *Compulife Software, Inc. v. Moses Newman et al.*, No. 9:16-CV-81942-RLR, and "Pg." stands for the internal page number as identified in the District Court's document header.

Compulife's trade secrets." (Doc. 310, Pg. 43). In the District Court's subsequent final judgment ("Judgment"), the District Court awarded Compulife damages in the amount of "$552,677.61 plus prejudgment interest and post-judgment interest." (Doc. 453, Pg. 12 ¶ 25; Doc. 404).

On November 24, 2021, in an attempt to collect on the Judgment against Binyomin Rutstein, Compulife filed a Writ of Garnishment ("Writ") (Doc. 337) against Zurich American Insurance Company ("Zurich"), which insured Binyomin Rutstein under Sponsored Insurance Agents Errors and Omissions Liability Policy No. EOC 5401348-13 issued to The Agents of the Independent Order of Foresters, Members of the Financial Sales Professional Purchasing Group, as the named insured, for the policy period February 1, 2016 to February 1, 2017 ("Policy") (Doc. 407-2).

On January 26, 2022, Zurich filed a motion for summary judgment ("Summary Judgment Motion"), seeking a declaration "the Policy does not afford coverage for the relief awarded against [Binyomin] Rutstein" in the Judgment entered in the Suits. (Doc. 406, Pg. 2). For the reasons described in Zurich's Summary Judgment Motion, the Policy does not afford coverage for the Judgment because:

> (a) [Binyomin] Rutstein's acts giving rise to liability for misappropriation of trade secrets were willful and intentional and do not qualify as professional services under the Policy; and (b) the Policy excludes coverage for claims arising from the use of confidential

3

information, and misappropriation of trade secrets plainly involves the use of confidential information.

(Doc. 406, Pg. 3).

By order dated July 28, 2022 ("Summary Judgment Order"), the District Court granted Zurich's Summary Judgment Motion and dissolved the Writ.  (Doc. 453, Pg. 2).  This appeal followed.

**(ii)    Statement of Facts**

**(A)    Policy**

The Policy provides life insurance agents errors and omissions liability insurance on a claims made and reported basis for the policy period February 1, 2016 to February 1, 2017.  (Doc. 407-2, Pg. 5; Doc. 407, Pg. 2 ¶ 2; Doc. 453, Pg. 6 ¶ 2).

Binyomin Rutstein is listed as a "Named Certificate Holder" in Certificate of Insurance No. 5406696 ("Certificate"), issued by Zurich pursuant to the Policy. (Doc. 407-3, Pg. 3, Item 1; Doc. 407, Pg. 2 ¶ 3; Doc. 453, Pg. 7 ¶ 3).  With respect to Binyomin Rutstein, the Certificate provides, subject to its terms and a $1,000 each claim deductible, limits of liability of $1,000,000 each claim and $1,000,000 in aggregate.  (Doc. 407-3, Pg. 3, Items 4 & 6).  The payment of defense costs to defend a claim under the Policy reduces the Policy's limits of liability.  (Doc. 407-2, Pg. 8, Insuring Agreements § I.C & Definitions §§ II.G, II.H).

4

The Policy's Insuring Agreement, provides, in part:

## A.    COVERAGE - PROFESSIONAL LIABILITY

The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4. of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6. of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1.    The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; or when the "Named Certificate Holder" has initiated the contracting paperwork with the "Additional Insured" and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period".   In the event that the "Named Certificate Holder's" contract with the "Additional Insured" terminates during the "Policy Period", the "Named Certificate Holder's" coverage shall continue for ninety (90) days, or until the end of the "Policy Period", whichever comes first[.]

(Doc. 407-2, Pg. 35, Insuring Agreements § I.A, as modified by End't No. 14;

Doc. 407, Pgs. 2-3, ¶ 6; Doc. 453, Pg. 7 ¶ 4).

The Policy defines "Damages" to mean:

[T]he monetary amounts for which an "Insured" or "Additional Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party

5

and included in such third party's "Claim" against the "Insured" or "Additional Insured".  However, "Damages" do not include:

1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";

2. Punitive, exemplary or treble damages;

3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;

4. Non-pecuniary or injunctive relief; or

5. Judgments or awards from acts deemed uninsurable by law.

(Doc. 407-2, Pg. 8, Definitions §II.G; Doc. 407, Pg. 3 ¶ 7; Doc. 453, Pg. 7 ¶ 5).

The Policy defines "Insured", in relevant part, as:

1. The "Named Certificate Holder";

2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned or controlled by the "Named Certificate Holder", and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder"; [or]

3. Any person acting on behalf of the "Named Certificate Holder", who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"[.]

(Doc. 407-2, Pg. 9, Definitions § II.J; Doc. 407, Pg. 4 ¶ 8; Doc. 453, Pg. 8 ¶ 6).

6

The Policy defines "Professional Services" as:

1.      The sale, solicitation or servicing of:

    a.      Life Insurance, Accident and Health Insurance, Workers' Compensation Insurance as part of a 24-Hour Accident and Health Insurance product, Disability Income Insurance or Annuities;

    b.      Variable products, including but not limited to Variable Annuities, Flexible and Scheduled Premium Annuities and Variable Life Insurance;

    c.      Employee Benefit Plans funded with those products listed herein in Subsections 1.a., b., d., and e.;

    d.      Mutual funds registered with the Securities and Exchange Commission and sold by a licensed "Registered Representative" through a Financial Industry Regulatory Authority ("FINRA")-licensed "Broker/Dealer";

    e.      "Securities" for which Forester Equity Services, Inc. or Foresters Financial Services, Inc. fka First Investors Corporation acted as the "Broker/Dealer" in connection with the specific sale or service out of which the "Claim" arose;

    f.      "Financial Planning"[.]

(Doc. 407-2, Pg. 10, Definitions § II.Q and Pg. 19 § A; Doc. 407, Pgs. 4-5 ¶ 9; Doc. 453, Pg. 8 ¶ 7).

The Policy excludes coverage for any "Claim":

Arising out of any act, error, or omission of the "Insured" committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such

event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company[.]

(Doc. 407-2, Pg. 13, Exclusions § VI.A ("Exclusion A"); Doc. 407, Pg. 5 ¶ 10; Doc. 453, Pg. 9 ¶ 8).

The Policy also "does not apply to any 'Claim' . . . [a]rising out of the use of confidential information by an 'Insured', including but not limited to such use for the purpose of replacement of coverage[.]"  (Doc. 407-2, Pg. 14, Exclusions § VI.J ("Exclusion J"); Doc. 407, Pg. 5 ¶ 11; Doc. 453, Pg. 9 ¶ 9).

**(B)     Compulife's Trade Secret Dispute with Defendants**

Compulife "develops and markets life insurance comparison and quotation software."  (Doc. 310, Pg. 3; Doc. 407, Pg. 6 ¶ 13; Doc. 453, Pg. 9 ¶ 10).  The Suits arose out of Defendants' alleged misappropriation of Compulife's "trade secret by accessing [Compulife's] Transformative Database on another server to generate life insurance quotes without Compulife's permission" and "misappropriat[ing] a trade secret by scraping data from [Compulife's] Term4Sale site."  (Doc. 310, Pgs. 2-3).

Binyomin Rutstein, Zurich's insured, is an insurance agent licensed in approximately thirty-five different states, including Florida, and owns American Web Designers, Ltd. ("AWD"), which is "licensed as an insurance agency." (Doc. 310, Pg. 11 n.14, Pg. 12; Doc. 407, Pg. 6 ¶ 14; Doc. 453, Pg. 9 ¶ 12). Binyomin Rutstein ceased working for AWD in 2010 and "never sold a life insurance policy in his life." (Doc. 453, Pg. 9 ¶ 13; *id.*, Pg. 14 ¶ 37; Doc. 310, Pg. 11

8

n.14; Doc. 159-1, Pg. 3 ¶ 34).  David Rutstein, Binyomin Rutstein's father and co-defendant, was previously licensed as an insurance agent in Florida; in 2012, however, his license was revoked and he was permanently barred from working in the insurance industry.  (Doc. 310, Pg. 10; Doc. 407, Pg. 6 ¶ 15; Doc. 453, Pg. 10 ¶ 14).

Beginning in or around 2010, David Rutstein founded the National Association of Accredited Insurance Professionals ("NAAIP") and BeyondQuotes (together with NAAIP, "Rutstein Companies"), which offered a range of services to life insurance agents, including, but not limited to, website creation and use of a "Life Insurance Quote Engine".  (Doc. 310, Pgs. 11-12; Doc. 407, Pg. 6 ¶ 16; Doc. 453, Pg. 10 ¶ 15).  The Rutstein Companies, through their websites, "provided internet visitors the ability to obtain free quotes for term life insurance policies, the same service provided by the Compulife Software and Compulife's www.Term4Sale.com website."  (Doc. 310, Pg. 12; Doc. 407, Pg. 6 ¶ 17; Doc. 453, Pg. 10 ¶ 16).  Binyomin Rutstein was the purported president of NAAIP, and he gave his father permission to use his insurance license.  (Doc. 310, Pgs. 11, 12; Doc. 407, Pg. 6 ¶ 16; Doc. 453, Pg. 10 ¶ 15).

David Rutstein used Binyomin Rutstein's insurance license in Florida to gain access to Compulife's software and data, without permission or license from Compulife, and subsequently used Compulife's software and data for the services

9

the Rutstein Companies provided on their websites.  (Doc. 310, Pgs. 13-17; Doc. 407, Pgs. 6-7, ¶ 18; Doc. 453, Pg. 10 ¶ 17).

In or around April 2015, Compulife discovered its software and data were being used by the Rutstein Companies, without Compulife's permission, and demanded the Rutstein Companies cease their unauthorized use of Compulife's intellectual property.  (Doc. 310, Pgs. 14-17; Doc. 407, Pg. 7 ¶ 19; Doc. 453, Pgs. 10-11 ¶ 18).

Compulife filed its complaint in Case No. 9:16-cv-80808-RLR in May 2016, alleging copyright infringement and theft of trade secrets.  (Doc. 310, Pg. 2; Doc. 407, Pg. 7 ¶ 21; Doc. 453, Pg. 11 ¶ 19).  In September 2016, the Rutstein Companies initiated a successful "scraping attack" on Compulife "to create a partial copy of Compulife's Transformative Database, extracting all the insurance-quote data pertaining to two zip codes—one in New York and another in Florida."  (*See* Doc. 310, Pgs. 18-19; Doc. 407, Pg. 7 ¶ 22; Doc. 453, Pg. 11 ¶ 20); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1299 (11th Cir. 2020).

On December 2, 2016, following the scraping attack, Compulife filed its complaint in Case No. 9:16-cv-81942-RLR against Binyomin Rutstein, David Rutstein, and others, alleging copyright infringement and misappropriation of a trade secret related to the scraping attack.  (Doc. 310, Pgs. 2-3; Doc. 407, Pg. 7 ¶ 23; Doc. 453, Pg. 11 ¶ 21).  In January 2017, the District Court consolidated the

Suits (Case Nos. 9:16-cv-80808-RLR and 9:16-cv-81942-RLR) for trial.  (Doc. 44; Doc. 453, Pg. 11 ¶ 22).

### (C)    Zurich's Coverage Position

By correspondence dated June 28, 2017, personal counsel for Binyomin Rutstein provided Zurich with notice of the claim ("Claim") against Binyomin Rutstein by Compulife.  (Doc. 407-1, Pg. 4 ¶ 6; Doc. 407, Pg. 8 ¶ 25; Doc. 453, Pg. 11 ¶ 23).  Zurich agreed to provide Binyomin Rutstein with a defense against the Claim under the Policy, subject to its terms and Zurich's reservation of rights. (Doc. 407-4; Doc. 407, Pg. 8 ¶ 26; Doc. 453, Pgs. 11-12 ¶ 24).  Zurich specifically reserved its rights to deny coverage, *inter alia*: (1) for any relief awarded which was not covered under the Policy's definition of "Damages", (2) to the extent the Claim does not arise out of "negligent" conduct by Binyomin Rutstein in the rendering of "Professional Services," and (3) pursuant to the Policy's Exclusions A and J. (Doc. 407-4, Pgs. 6-8; Doc. 407, Pg. 8 ¶ 27; Doc. 453, Pg. 12 ¶ 24).

### (D)    The District Court's July 2021 Findings of Fact and Conclusions of Law

On July 12, 2021, following a bench trial, the District Court entered the July 2021 Order and determined (1) Compulife was entitled to judgment in its favor on Compulife's misappropriation of trade secrets claims, and (2) Defendants were entitled to judgment in their favor on Compulife's copyright infringement claims. (Doc. 310, Pg. 45; Doc. 407, Pgs. 8-9 ¶ 28; Doc. 453, Pg. 12 ¶ 25).

To prevail on its trade secret claims, Compulife was required to demonstrate: (1) "it possessed a trade secret"; and (2) "its trade secret information was 'misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it.'" (Doc. 310, Pgs. 34-35). The District Court noted that under both the Federal Defend Trade Secrets Act ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"), a trade secret is defined as "(1) any type of information, (2) that derives economic value from being secret, and (3) that is kept secret." (*Id*., Pg. 34 n.26).

With respect to Compulife's trade secret claims against Defendants in Case No. 9:16-cv-80808, the District Court determined David Rutstein "misrepresented his affiliation" when he "initially sought access to the Transformative Database," which was "sufficient to establish Defendants' misappropriation of Compulife's trade secret." (Doc. 310, Pg. 36). The District Court further determined "David Rutstein intentionally misled Compulife in August 2011, which directly resulted in his acquisition of Compulife's Transformative Database without Compulife's permission." (*Id*., Pgs. 37-38).

With respect to Compulife's trade secret claims in Case No. 9:16-cv-81942, the District Court determined "that by using a robot to hack the Term4Sale website, Defendants intentionally sought to acquire Compulife's trade secrets through improper means." (Doc. 310, Pg. 40). The District Court further determined

12

"Defendants' subsequent use of the Term4Sale website in a way that was never intended, stealing a significant portion of Compulife's data, and knowingly incorporating that stolen data into its own websites also constitutes improper means." (*Id*., Pgs. 40-41).

Because "[m]isappropriation of trade secrets is an intentional tort in the state of Florida[,]" the District Court concluded "imposing joint and several liability against all of the Defendants named in these actions is proper." (Doc. 310, Pg. 41). The District Court determined "[e]ach Defendant played a critical role in the enterprise to misappropriate Compulife's trade secrets" and "all four Defendants were involved in either directly acquiring Compulife's trade secrets or in using these trade secrets for economic gain and/or to the detriment of Compulife." (*Id*., Pg. 42).

The District Court further determined Binyomin Rutstein, who owned AWD, a licensed insurance agency, "allowed his father to use [AWD] to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database" and "allowed his father to use his insurance license and name to establish insurance-related businesses in violation of the consent decree barring [his father] from the insurance industry." (Doc. 310, Pg. 42).

The District Court concluded: "Compulife has established that Defendants acted willfully and maliciously in misappropriating Compulife's trade secrets"; and, "given the collaborative efforts of all four Defendants," each of the Defendants is

13

"liable for misappropriating Compulife's trade secrets" and jointly and severally liable for the damages awarded to Compulife.  (Doc. 310, Pgs. 43-44).

### (E)    Zurich's Supplemental Coverage Position

By correspondence dated July 27, 2021, subsequent to the District Court's July 2021 Order, Zurich denied indemnity coverage for the Judgment entered against Binyomin Rutstein in the Suits.  (Doc. 407-5, Pgs. 7-8).

### (F)    Garnishment Proceedings

On November 24, 2021, Compulife filed the Writ against Zurich.  (Doc. 337; Doc. 453, Pg. 2).  Zurich answered the Writ on December 16, 2021 ("Answer") and stated the Policy "does not afford coverage to Rutstein—or any other defendant in the above-captioned matter—for the final judgment in this matter entered on October 20, 2021."  (Doc. 378, Pg. 2-3; Doc. 453, Pg. 2).

After the District Court determined Compulife's first reply to Zurich's Answer failed to adequately refute Zurich's Answer and failed to comply with applicable Florida statutes, Compulife filed an amended reply to Zurich's Answer on January 12, 2022.  (Docs. 381, 389, 396; Doc. 453, Pgs. 2-3).  In its January 2022 reply, Compulife alleged the Policy "does in fact afford coverage to Rutstein for the final judgment" because "[t]he acts and omissions committed by Binyomin Rutstein as found by the Court in the Order entered after trial were negligent acts, errors or omissions of Binyomin Rutstein in rendering or failing to render Professional

Services" and the compensatory damages and prejudgment interest on the compensatory damages "are covered by the Policy and not excluded under any exclusion." (Doc. 396, Pgs. 2-3, ¶¶ 2, 4-7; Doc. 453, Pg. 3).

**(G)    Summary Judgment Proceedings**

On January 26, 2022, Zurich filed its Summary Judgment Motion seeking a declaration the Policy does not afford indemnity coverage for the Judgment awarded to Compulife and against Defendants. (Doc. 406, Pg. 2; Doc. 453, Pg. 3). First, Zurich argued coverage for the Judgment is precluded by Exclusion A of the Policy, which excludes coverage for any Claim:

> Arising out of any act, error, or omission of the "Insured" committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company[.]

(Doc. 406, Pgs. 14-16; Doc. 407-2, Pg. 13, Exclusions § VI.A).

Second, Zurich argued coverage for the Judgment is excluded by Exclusion J of the Policy, which provides the Policy "does not apply to any 'Claim' . . . [a]rising out of the use of confidential information by an 'Insured', including but not limited to such use for the purpose of replacement of coverage[.]" (Doc. 406, Pgs. 14-16; Doc. 407-2, Pgs. 13-14, Exclusions § VI.J).

15

Lastly, Zurich argued the Suits do not trigger coverage under the Policy's Insuring Agreements because Binyomin Rutstein's acts giving rise to the misappropriation of trade secrets were not "negligent" acts, errors, or omissions "in rendering or failing to render 'Professional Services'" under the Policy. (Doc. 406, Pgs. 17-19; Doc. 407-2, Pg. 35, Insuring Agreements § I.A, as modified by End't No. 14; Doc. 407-2, Pg. 10, Definitions § II.Q and Pg. 19 § A).

In Compulife's opposition to Zurich's Summary Judgment Motion, Compulife contended "there are material facts that remain as to whether Binyomin Rutstein acted intentionally in the misappropriation of Compulife's trade secrets[.]" (Doc. 438, Pg. 5). Compulife asserted this position even though, in the July 2021 Order, the District Court specifically determined *all* Defendants—including Binyomin Rutstein—were liable for the intentional tort of misappropriation of trade secrets and *all* Defendants "acted willfully and maliciously in misappropriating Compulife's trade secrets." (Doc. 310, Pg. 43).

Following oral argument, the District Court granted Zurich's Summary Judgment Motion. (Doc. 453). In the Summary Judgment Order, the District Court determined Zurich is entitled to summary judgment and a declaration the Policy does not afford coverage for the Judgment because "no qualifying 'Professional Services' were being provided" by Binyomin Rutstein at the time the acts giving rise to the Claim arose. (*Id*., Pgs. 17-18). As explained by the District Court:

16

The undisputed material facts show that Binyomin Rutstein was not engaged in the "sale, solicitation, or servicing" of insurance products through AWD [Binyomin Rutstein's company] when the acts giving rise to the putative insurance claim arose. [Binyomin Rutstein] testified that he ceased working for AWD in 2010. He gave contradictory testimony about whether he had sold insurance through AWD prior to ceasing his work there. The Pretrial Stipulation and Binyomin Rutstein's 2016 deposition say that he never sold any life insurance. He testified in a 2022 deposition that he sold insurance through AWD "for a little bit" in 2010 or 2011. Any inconsistency is not material because the first act of misappropriating Compulife's trade secrets occurred in August 2011, when David Rutstein obtained Compulife's HTML code. ECF No. 310 at n.15 (citing DX 1). So, at the time of the conduct underlying the Final Judgment, Binyomin Rutstein was not engaged in the "sale, solicitation or servicing" of insurance. In fact, there are no facts in the record that AWD (through Binyomin Rutstein or otherwise) sold, solicited, or serviced insurance for others after 2010.

The undisputed material facts also show that, between August 2011 and April 2015, Binyomin Rutstein's only involvement with AWD was to hold the insurance license and to provide digital marketing and web design services. Merely putting one's name on an insurance license, without more, is not the "sale, solicitation or servicing" of insurance for others, nor is it engaging in the profession of being an insurance agent. Therefore, Binyomin Rutstein is not entitled to coverage under the Policy for the conduct underlying the Final Judgment.

(*Id*., Pgs. 17-18).

The District Court further determined the Policy does not afford coverage for the Judgment because the "Policy provides coverage *only* for 'a negligent act, error or omission of the 'Insured'''", and Binyomin Rutstein "was more than merely negligent; he was, at best, reckless." (Doc. 453, Pgs. 18-20) (emphasis added). The District Court declined to grant summary judgment on Zurich's alternative

17

arguments regarding application of Exclusions A and J of the Policy to exclude coverage for the Judgment. (Doc. 453, Pgs. 20-21).

**(iii)    Standard of Review**

The Court of Appeals reviews a district court's grant of summary judgment *de novo*. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc*., 920 F.3d 704, 707 (11th Cir. 2019). The dispute in this insurance coverage matter, which involves "the interpretation of a contract[,] is also a matter of law subject to *de novo* review." *O'Brien v. Transamerica Premier Life Ins. Co*., 745 F. App'x 349, 351 (11th Cir. 2018).

In reviewing a district court's grant of summary judgment, the Court of Appeals applies "the same legal standards that governed the district court." *Kroma Makeup*, 920 F.3d at 707 (citing *Johnson v. Bd. of Regents of Univ. of Ga*., 263 F.3d 1234, 1242 (11th Cir. 2001)). As such, the Court of Appeals may affirm the District Court's Summary Judgment Order if "there is no genuine dispute as to any material fact" and Zurich "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court of Appeals, "[w]hen reviewing a grant of summary judgment," considers "the evidence in the light most favorable to the non-moving party and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Kroma Makeup*, 920 F.3d at 707 (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013)). However, "[m]ere conclusions and unsupported factual allegations are

18

legally insufficient to defeat a summary judgment motion." *Fannin v. United Space All., LLC*, 392 F. App'x 788, 789 (11th Cir. 2010) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

The District Court's Summary Judgment Order in favor of Zurich "can be affirmed on any ground supported by the record, regardless of the basis for the initial decision." *Kroma Makeup*, 920 F.3d at 707 (citing *Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995)); *see also Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) ("We may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below."); *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 613 (11th Cir. 1995) ("[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied.").

## SUMMARY OF THE ARGUMENT

Although the litigation between Compulife, Binyomin Rutstein, and the other Defendants has a long and complicated procedural history, *see, e.g.*, *Compulife Software Inc. v. Newman,* 959 F.3d 1288 (11th Cir. 2020), the insurance coverage dispute arising out of Compulife's garnishment proceedings against Zurich is straightforward and should be summarily affirmed in Zurich's favor.

In granting Zurich's Summary Judgment Motion, the District Court correctly determined the Policy does not afford coverage for the Judgment because

19

(1) "Binyomin Rutstein was not providing 'Professional Services' during the relevant time period", when the acts giving rise to the Claim arose, and (2) the "Policy provides coverage *only* for 'a negligent act, error or omission of the 'Insured''" and Binyomin Rutstein "was more than merely negligent; he was, at best, reckless." (Doc. 453, Pg. 18-20) (emphasis added). The Suits, accordingly, do not trigger coverage under the Policy's Insuring Agreements and the District Court correctly determined the Policy does not afford coverage for the Judgment. In addition, the District Court's Summary Judgment Order should be affirmed on the two alternative grounds raised in Zurich's Summary Judgment Motion: application of Exclusions A and J of the Policy.

Exclusion A—which excludes coverage for claims "[a]rising out of any act, error, or omission of the 'Insured' committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent" (Doc. 407-2, Pg. 13, Exclusions § VI.A)—plainly applies to exclude indemnity coverage for the Judgment because the District Court adjudicated the Suits and determined Binyomin Rutstein and the other Defendants "acted willfully and maliciously in misappropriating Compulife's trade secrets." (Doc. 310, Pg. 43).

Exclusion J—which precludes coverage for claims "[a]rising out of the use of confidential information by an 'Insured', including but not limited to such use for the purpose of replacement of coverage" (Doc. 407-2, Pg. 14, Exclusions § VI.J)—

also plainly applies to exclude indemnity coverage for the Judgment because the causes of action for which Binyomin Rutstein was found liable are all based on misappropriation of trade secrets. Under both the DTSA and FUTSA, a trade secret is defined as "(1) any type of information, (2) that derives economic value from being *secret*, and (3) that is kept *secret*." (ECF No. 310, Pg. 34 n.26) (emphasis added).

For the reasons described below, in Zurich's Summary Judgment Motion, and in the District Court's Summary Judgment Order, the District Court's grant of summary judgment in favor of Zurich should be affirmed because the Policy does not afford indemnity coverage for the Judgment against Binyomin Rutstein.

## **ARGUMENT**

**I.    The District Court Properly Granted Zurich's Summary Judgment Motion Because the Claim Against Binyomin Rutstein Did Not Arise out of a Negligent Act, Error, or Omission in Rendering or Failing to Render Professional Services for Others.**

In the Summary Judgment Order, the District Court properly granted Zurich's Summary Judgment Motion on the bases (a) Zurich's insured, Binyomin Rutstein, was not providing any "Professional Services", as defined by the Policy, when the acts giving rise to the Claim occurred and (b) "Binyomin Rutstein was more than merely negligent; he was, at best, reckless." (Doc. 453, Pgs. 19-20).

Under Florida law, as the party seeking coverage for the Judgment under the Policy, Compulife bears the burden of proving the Judgment falls within the

coverage of the Policy.  *E.g.*, *Southern-Owners Ins. Co. v. Fla. Constr. Servs., Inc.*, 569 F. Supp. 3d 1186, 1194 (M.D. Fla. 2021), *reconsideration denied*, No. 8:20-CV-1706-WFJ-TGW, 2021 WL 6884309 (M.D. Fla. Dec. 17, 2021) ("The party seeking coverage bears the burden of proving an underlying claim is covered by the policy.") (citing *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997)).

For the Judgment to fall within the Policy's coverage, the Claim must "aris[e] out of a negligent act, error or omission of [Binyomin Rutstein] in rendering or failing to render 'Professional Services' for others in the conduct of the 'Named Certificate Holder's' profession as an 'Agent', 'General Agent', notary public, or 'Registered Representative[.]'"  (Doc. 407-2, Pg. 35, Insuring Agreements § I.A, as modified by End't No. 14).

Under the Policy, "Professional Services" are defined as:

1.    The sale, solicitation or servicing of:

    a.    Life Insurance, Accident and Health Insurance, Workers' Compensation Insurance as part of a 24-Hour Accident and Health Insurance product, Disability Income Insurance or Annuities;

    b.    Variable products, including but not limited to Variable Annuities, Flexible and Scheduled Premium Annuities and Variable Life Insurance;

    c.    Employee Benefit Plans funded with those products listed herein in Subsections 1.a., b., d., and e.;

      d.      Mutual funds registered with the Securities and Exchange Commission and sold by a licensed "Registered Representative" through a Financial Industry Regulatory Authority ("FINRA")-licensed "Broker/Dealer";

      e.      "Securities" for which Forester Equity Services, Inc. or Foresters Financial Services, Inc. fka First Investors Corporation acted as the "Broker/Dealer" in connection with the specific sale or service out of which the "Claim" arose;

      f.      "Financial Planning"[.]

(Doc. 407-2, Pg. 10, Definitions § II.Q and Pg. 19 § A).

The District Court correctly determined the Policy does not afford coverage for the Judgment because "Binyomin Rutstein was not engaged in the 'sale, solicitation, or servicing' of insurance products through AWD when the acts giving rise to the [Claim] arose." (Doc. 453, Pgs. 17-18). As the District Court explained, and contrary to Compulife's rambling contentions in its opening brief ("Opening Brief"), there is no *material* dispute of fact precluding summary judgment in Zurich's favor on this basis because:

> The undisputed material facts show that Binyomin Rutstein was not engaged in the "sale, solicitation, or servicing" of insurance products through AWD [Binyomin Rutstein's company] when the acts giving rise to the putative insurance claim arose. [Binyomin Rutstein] testified that he ceased working for AWD in 2010. He gave contradictory testimony about whether he had sold insurance through AWD prior to ceasing his work there. The Pretrial Stipulation and Binyomin Rutstein's 2016 deposition say that he never sold any life insurance. He testified in a 2022 deposition that he sold insurance through AWD "for a little bit" in 2010 or 2011. Any inconsistency is not material because the first act of misappropriating Compulife's trade secrets occurred in August 2011, when David Rutstein obtained Compulife's HTML code.

ECF No. 310 at n.15 (citing DX 1). So, at the time of the conduct underlying the Final Judgment, Binyomin Rutstein was not engaged in the "sale, solicitation or servicing" of insurance. In fact, there are no facts in the record that AWD (through Binyomin Rutstein or otherwise) sold, solicited, or serviced insurance for others after 2010.

The undisputed material facts also show that, between August 2011 and April 2015, Binyomin Rutstein's only involvement with AWD was to hold the insurance license and to provide digital marketing and web design services. Merely putting one's name on an insurance license, without more, is not the "sale, solicitation or servicing" of insurance for others, nor is it engaging in the profession of being an insurance agent. Therefore, Binyomin Rutstein is not entitled to coverage under the Policy for the conduct underlying the Final Judgment.

(Doc. 453, Pgs. 17-18). The Summary Judgment Order should be affirmed because the District Court correctly determined Binyomin Rutstein was not rendering Professional Services[2], as defined by the Policy, when the Claim arose and therefore no coverage exists for the Judgment.

Similarly, the Summary Judgment Order should be affirmed because the District Court properly determined the acts giving rise to the Judgment were not negligent. (Doc. 453, Pgs. 18-20). The District Court's July 2021 Order

---

[2] Moreover, Binyomin Rutstein's acts of willful misappropriation of Compulife's trade secrets plainly fall outside the unambiguous definition of "Professional Services" covered under the Policy. *E.g.*, *Denman v. Gen. Star Nat'l Ins. Co.*, No. 11-24086-CIV-MARTINEZ-MCALILEY, 2012 WL 13014689, at *4-5 (S.D. Fla. July 23, 2012) (claims against insured attorney that involved "soliciting privileged and confidential information . . . constitute[d] intentional interference with an ongoing contract duty or interference with a continuing business relationship" did not qualify as professional services under an attorney malpractice liability policy).

conclusively established Defendants, including Binyomin Rutstein, "acted willfully and maliciously in misappropriating Compulife's trade secrets[,]" and "given the collaborative efforts of all four Defendants," the District Court determined "each of them is liable for misappropriating Compulife's trade secrets[,]" which is an intentional tort. (Doc. 310, Pgs. 41, 43-44). With respect to Binyomin Rutstein, the District Court determined he owned AWD, a licensed insurance agency, he "allowed his father to use [AWD] to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database", and he "allowed his father to use his insurance license and name to establish insurance-related businesses in violation of the consent decree barring [his father] from the insurance industry." (*Id*., Pg. 42).

Compulife, in its Opening Brief, and as it did in its summary judgment briefing, seeks to introduce and rely on the self-serving post-Judgment testimony of Binyomin Rutstein to create factual disputes, contradict the District Court's factual findings and legal conclusions, and argue there are material issues of fact precluding summary judgment on Zurich's duty to indemnify. Compulife's contentions, however, are based on a fundamental misunderstanding of an insurer's duty to indemnify under Florida law.

Under Florida law, "[u]nlike the duty to defend, which generally is triggered by the allegations in the underlying complaint, an insurance company's duty to indemnify an insured party 'is narrower and is determined by the underlying facts

25

adduced at trial or developed through discovery during the litigation.'" *Stephens v. Mid-Continent Cas. Co*., 749 F.3d 1318, 1324 (11th Cir. 2014) (quoting *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006)); *Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 228 F. Supp. 3d 1313, 1325 (S.D. Fla. 2017), *aff'd*, 713 F. App'x 951 (11th Cir. 2017). The duty to indemnify is, therefore, "dependent upon the entry of a *final judgment*, settlement or a final resolution of the underlying claim." *Mt. Hawley Ins. Co.*, 228 F. Supp. 3d at 1325 (quoting *J.B.D. Constr., Inc. v. Mid–Continent Cas. Co.*, 571 Fed. App'x. 918, 927 (11th Cir. 2014) (per curiam)) (emphasis added). In other words, "[a] declaration as to the duty to indemnify" is ripe once "there has been a resolution of the underlying claim." *Id*.; *see also Fid. Nat'l Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc.*, No. 3:07CV278/MCREMT, 2010 WL 1911159, at *7 (N.D. Fla. May 12, 2010) ("[T]he duty to indemnify is not ripe for adjudication in a declaratory judgment action *until there is a factual determination that the insured is liable in the underlying suit*.") (emphasis added); *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006) ("[T]he duty to indemnify is narrower and is determined by the underlying facts adduced at trial or developed through discovery during the litigation.").

Here, at the time Zurich filed its Summary Judgment Motion, Zurich's duty to indemnify was, and is, ripe for consideration, as the District Court conducted a

bench trial, assessed the various parties' credibility, weighed the evidence presented, and made the relevant factual determinations to support its legal conclusions that all Defendants, including Binyomin Rutstein, are liable for knowing and willful misappropriation of Compulife's trade secrets. (Doc. 310). Thus, Compulife's effort to relitigate Binyomin Rutstein's liability for willful and knowing misappropriation of Compulife's trade secrets is improper and must be rejected. The factual findings and legal conclusions necessary to assess Zurich's duty to indemnify under the Policy were determined by the District Court in the July 2021 Order and the Judgment, and Zurich's duty to indemnify is premised on these previously adjudicated factual findings and legal conclusions. *E.g.*, *Mt. Hawley Ins.*, 228 F. Supp. 3d at 1325; *U.S. Fire Ins.*, 930 So. 2d at 691. Compulife is not entitled to relitigate these issues and directly contradict the positions it asserted during the trial of its claims against Defendants.

For the reasons described above and in the Summary Judgment Order, the Court of Appeals should affirm the District Court's determination the Policy does not afford coverage for the Judgment, and Zurich is therefore entitled to summary judgment, because the Claim does not "aris[e] out of a negligent act, error or omission of [Binyomin Rutstein] in rendering or failing to render 'Professional Services' for others[.]" (Doc. 407-2, Pg. 35, Insuring Agreements § I.A, as modified by End't No. 14; Doc. 453, Pgs. 17-20).

27

II.    **The District Court's Grant of Summary Judgment to Zurich Should Be Affirmed for the Additional Reason Exclusion A of the Policy Applies to Exclude Coverage for the Judgment.**

As discussed in the Standard of Review section, *supra*, this Court may affirm the District Court's grant of summary judgment to Zurich "on any ground supported by the record, regardless of the basis for the initial decision." *Kroma Makeup,* 920 F.3d at 707.  For reasons described below and in Zurich's Summary Judgment Motion, even though the District Court disagreed, Zurich is entitled to summary judgment because Exclusion A of the Policy plainly applies to exclude coverage for the Judgment.  Exclusion A provides the Policy does not afford coverage for any claim:

> Arising out of any act, error, or omission of the "Insured" committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication.  In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company[.]

(Doc. 407-2, Pg. 13, Exclusions § VI.A).

Courts applying Florida law regularly enforce intentional act exclusions similar to the Policy's Exclusion A.  *E.g.*, *Westport Ins. Corp. v. L. Offs. of Gerald J. Lindor, P.A.*, No. 08-61644-CIV, 2009 WL 722254, at *2 (S.D. Fla. Mar. 18, 2009) ("Florida courts have consistently found that similar exclusions based on fraudulent, dishonest, intentional, or criminal acts [are] valid an[d]

enforceable."). For example, in *Westport Ins.*, the court determined there was no coverage under a lawyers professional liability insurance policy for the insured's "misappropriation and improper commingling of funds" pursuant to a policy exclusion for "any claim based upon, arising out of, attributable to, or directly or indirectly resulting from . . . any intentional, criminal, dishonest, malicious, or fraudulent . . . act, error, [or] omission[.]" *Westport Ins.*, 2009 WL 722254, at \*2, 3; *see also Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins.*, 32 F. Supp. 3d 1226, 1229 (S.D. Fla. 2014) (exclusion for claim "based upon, arising out of, directly or indirectly relating to or in any way involving . . . [c]onduct which is fraudulent, dishonest, criminal, willful, malicious, intentionally or knowingly wrongful" precluded coverage where court found insured "engaged in an ongoing scheme to defraud multiple insurance companies . . . by providing materially false information on applications") (citation omitted); *Great Am. Ins. Co. v. Barrett*, No. 8:06-cv-1405-T-24-TGW, 2007 WL 9723861, at \*4 (M.D. Fla. June 28, 2007) (claims "based on [insured's] intentional conduct in soliciting and defrauding the plaintiffs" were precluded by exclusion for claims "arising out of any criminal, dishonest, intentional, fraudulent, malicious, or deliberate wrongful act committed by an insured.").

Here, the District Court's July 2021 Order determining Defendants, including Binyomin Rutstein, are liable for misappropriation of trades secrets is replete with

findings of fact and conclusions of law conclusively establishing the applicability of the Policy's Exclusion A.    For example, the District Court determined: (1) "Defendants[3] *intentionally* sought to acquire Compulife's trade secrets *through improper means*"; (2) Defendants "st[ole] a significant portion of Compulife's data, and *knowingly* incorporate[ed] that stolen data into its own websites"; (3) Binyomin Rutstein, who owned AWD "allowed his father to use [AWD] to collect fees from insurance sales leads generated by Compulife's stolen Transformative Database" and "allowed his father to use his insurance license and name to establish insurance-related businesses in violation of the consent decree barring [his father] from the insurance industry"; (4) "Compulife has established that Defendants acted *willfully* and *maliciously* in misappropriating Compulife's trade secrets"; and (5) "[m]isappropriation of trade secrets is an *intentional tort* in the state of Florida." (Doc. 310, Pgs. 40-43) (emphasis added).

The sole basis for Binyomin Rutstein's liability in the Suits arises from willful misappropriation of Compulife's trade secrets.  (Doc. 310, Pgs. 38-44).  As such, the District Court made a final adjudication that Binyomin Rutstein's conduct giving rise to the Suits was "committed with dishonest, fraudulent, malicious, or knowingly wrongful purpose or intent[,]" as required for Exclusion A to apply.

---

[3] The District Court used the term "Defendants" to reference all defendants named in the above-captioned consolidated Suits, including Binyomin Rutstein.  (Doc. 310, Pg. 1).

(*See* Doc. 407-2, Pg. 13, Exclusions § VI.A).  Exclusion A is unambiguous and squarely applies to the Claim against Binyomin Rutstein.

Application of Exclusion A to the Judgment is further supported by Compulife's advocacy in the Suits, during which Compulife specifically sought joint and several liability against Binyomin Rutstein for the intentional tort of misappropriation of trade secrets.  Prior to the garnishment and summary judgment proceedings, Compulife advocated for the following findings of fact in the Suits:

- David Rutstein told Binyomin Rutstein that David Rutstein was using Binyomin Rutstein's insurance license to do business through AWD, BeyondQuotes.com and NAAIP.org.

- Binyomin Rutstein initially claimed in his testimony that he was never involved in NAAIP, but later admitted that he authorized Aaron Levy and Moses Newman to use his insurance licenses in connection with the operation and marketing of NAAIP to insurance agents.

- Defendants engaged in willful and malicious misappropriation.

(Doc. 284, Pg. 10 ¶ 64, Pg. 16 ¶ 125, Pg. 20 ¶ 153).  Compulife further advocated for the following legal conclusions:

- Binyomin Rutstein participated in the infringement. . . . Binyomin Rutstein has never sold an insurance policy in his life. . . . Binyomin [Rutstein] knew that his insurance licenses were being used to operate NAAIP and BeyondQuotes.

- The Court finds that defendant Binyomin Rutstein materially contributed to the infringement by permitting the use of his insurance licenses to operate NAAIP.  The evidence at trial showed that Binyomin Rutstein knew that the other defendants were using his insurance licenses to operate NAAIP and he

31

allowed it.  The Court determines in both the '808 case and the '942 case that defendant Binyomin Rutstein materially contributed to infringement.

- The Court also determines that Compulife has demonstrated that the defendants engaged in willful and malicious misappropriation, and therefore Compulife is entitled to exemplary damages.  The evidence of willful and malicious misappropriation presented was overwhelming.  The Defendants repeatedly lied, denied involvement, attempted to prolong litigation, avoided settlement, and engaged in violations of Compulife's rights in its copyrights and trade secrets with repeated notice that Compulife objected.

(Doc. 284, Pgs. 24-25, 27, 39).

Despite seeking and obtaining its desired factual findings and conclusions of law in the underlying litigation of the Suits and convincing the District Court to award the Judgment against Binyomin Rutstein and the other Defendants for willful misappropriation of trade secrets, Compulife argued during the summary judgment proceedings concerning the Writ, and continues to argue in its Opening Brief, that there are material issues of fact regarding whether Binyomin Rutstein acted negligently or intentionally.  Compulife's contentions are baseless and misplaced. As discussed *supra*, contrary to Compulife's contentions and the District Court's determination otherwise[4], all of the factual findings and legal conclusions necessary to demonstrate the application of Exclusion A to the Judgment were determined by

---

[4] The District Court declined to grant summary judgment to Zurich on the basis of Exclusion A of the Policy (Doc. 453, Pgs. 20-21) in the mistaken belief that it would have to relitigate its prior findings in order to do so.

32

the District Court in its July 2021 Order, when—after weighing the evidence presented and assessing the witnesses' credibility—it determined all four Defendants, including Binyomin Rutstein, are liable for willful and malicious trade secret misappropriation.  (Doc. 310, Pgs. 41-44).

In its garnishment proceedings against Zurich and in this appeal, Compulife has entirely reversed course from its position in the Suits and apparently seeks to overturn the very findings that resulted in the Judgment in the first place.  The Court of Appeals should not entertain Compulife's self-serving, inconsistent positions, which, if applied as Compulife now argues, would undo the very Judgment Compulife seeks to collect.  The findings of fact and conclusions of law in the July 2021 Order conclusively established Binyomin Rutstein's acts giving rise to his liability were committed with a knowingly wrongful purpose or intent.  (Doc. 310, Pgs. 40-44).  Thus, the Court of Appeals should affirm the District Court's grant of summary judgment to Zurich on the alternative, and additional, ground that Exclusion A of the Policy applies to exclude coverage for the Judgment.

## III.  The District Court's Grant of Summary Judgment to Zurich Should Be Affirmed for the Additional Reason Exclusion J of the Policy Applies to Exclude Coverage for the Judgment.

In the Summary Judgment Order, the District Court declined to grant summary judgment to Zurich based on application of Exclusion J of the Policy, which precludes coverage for claims "[a]rising out of the use of confidential

information by an 'Insured'[.]" (Doc. 407-2, Pg. 14, Exclusions § VI.J; Doc. 453, Pg. 21). With minimal analysis, the District Court determined: "Without drawing adverse inferences from other witness' testimony and other evidence (which I cannot do at this stage), there is insufficient evidence that Binyomin Rutstein personally used Compulife's confidential information." (Doc. 453, Pg. 21). For reasons similar to those discussed *supra* with respect to Exclusion A, however, because the Suits have been adjudicated and the District Court determined Binyomin Rutstein is liable for misappropriation of trade secrets, the necessary findings exist to establish the proper application of Exclusion J to exclude coverage for the Judgment.

Although the Policy does not define the term "confidential," under Florida law, the term is unambiguous and should be interpreted "according to its 'everyday meaning' as it is 'understandable to the layperson.'" *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015), *aff'd sub nom.*, *Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335 (11th Cir. 2017) (citation omitted). "Confidential" is defined as "*secret or private*, often in a formal, business, or military situation." *See Confidential Definition*, Dictionary.Cambridge.org, https://dictionary.cambridge.org/us/dictionary/english/confidential (last visited Apr. 19, 2023); *see also Confidential*, Black's Law Dictionary (11th ed. 2019) ("(Of information) meant to be kept secret; imparted in confidence[.]").

The counts for which Binyomin Rutstein was found liable are all based on misappropriation of trade secrets. Under both the DTSA and FUTSA, a trade secret is defined as "(1) any type of information, (2) that derives economic value from being *secret*, and (3) that is kept *secret*." (Doc. 310, Pgs. 34 n.26) (emphasis added).

The sole basis of Binyomin Rutstein's liability in the Suits is misappropriation of trade secrets. (Doc. 310, Pgs. 40-44). As such, Binyomin Rutstein's liability in the Suits is unequivocally premised on the use of Compulife's confidential information. (*Id*., Pgs. 34 n.26, 40-44). Exclusion J applies to exclude coverage for the relief awarded in the Judgment and the Court of Appeals should affirm the District Court's grant of summary judgment in favor of Zurich on the additional ground Exclusion J plainly applies to exclude coverage for the Judgment.

## IV. The Authorities Upon Which Compulife Relies in the Opening Brief Are Inapposite, and the "Factual Disputes" it Contends Preclude Summary Judgment are Immaterial and Irrelevant to Coverage Under the Policy.

### A. The Eleventh Circuit Case Compulife Contends is "Instructive" is Irrelevant and Inapposite.

In the Opening Brief, Compulife relies almost entirely on *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing to Policy No. 187581*, 56 F.4th 1280, 1290 (11th Cir. 2023), to support its contentions summary judgment was premature because the District Court improperly "made a credibility determination" regarding Binyomin Rutstein's allegedly conflicting testimony. (Opening Brief at 43-47). *Serendipity* is inapposite and Compulife's reliance is misplaced.

35

The insurance dispute in *Serendipity* involved first party coverage under a wet marine insurance policy for a yacht destroyed in a hurricane. 56 F.4th at 1281-82. The insurer denied coverage based on the insured's alleged breach of a warranty in the policy requiring a captain to remain aboard the yacht while the yacht was "underway." *Id*. at 1282. By statute, in Florida an insurer cannot disclaim coverage under the circumstances presented in *Serendipity* unless the breach of policy warranty "increased the hazard" posed by the risk to the property at issue. *Id*. at 1284, 1287. The district court in *Serendipity* determined the insured breached the policy warranty, the breach increased the hazard posed by the hurricane, the wet marine policy did not afford coverage for the loss, and the insurer was entitled to summary judgment. *Id*. at 1284. The Court of Appeals reversed the district court's summary judgment order because the Court determined the insured had presented sufficient evidence in the summary judgment proceedings to create a triable issue of fact as to whether the insured's breach of warranty "increased the hazard" posed to the insured's yacht by the hurricane. *Id*. at 1290.

*Serendipity* supports the non-controversial principle that summary judgment is not proper when there are disputes of material fact precluding judgment as a matter of law. 56 F.4th at 1290. Compulife could have cited Federal Rule of Civil Procedure 56(a) for the same proposition with the same "instructive" value. Contrary to Compulife's contentions in the Opening Brief, *Serendipity* is not

36

"instructive" simply because the Court of Appeals overturned a district court's summary judgment order; there are no factual similarities between *Serendipity* and this matter, nor are there any potential analogies to be drawn from the facts in *Serendipity*, as (1) it involved first-party property insurance, not third-party liability insurance; (2) the sole question of fact was triggered by a statute, not a policy term; and (3) the dispute in *Serendipity* did not involve indemnity coverage for a judgment against an insured, as is the case here. *Serendipity* simply does not apply.

Compulife cites only two other cases in its Opening Brief involving insurance coverage disputes—*Ilias v. USAA Gen. Indem. Co.*, No. 21-12486, 2023 WL 2487329 (11th Cir. Mar. 14, 2023), and *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)—but neither *Ilias* (which involved bad faith allegations against an automobile insurer) nor *Safeco* (which involved coverage for class actions against automobile and homeowners insurers for alleged violations of the Fair Credit Reporting Act ("FCRA")) are instructive or even relevant. (Opening Brief, Pgs. 38, 42). Compulife cites *Ilias*, like *Serendipity*, for the uncontroversial proposition summary judgment is improper when disputes of material fact exist. (*Id*., Pg. 38). As to *Safeco*, Compulife cites this United States Supreme Court case in support of Compulife's contention the District Court should have allowed a jury to determine whether Binyomin Rutstein acted negligently or recklessly. (*Id*., Pg. 42). Nothing in *Safeco*, however, supports Compulife's contentions; to the contrary, the Supreme

Court in *Safeco* determined "recklessness", in the context of an alleged violation of the FCRA, *could* be determined as a matter of law and the district court properly granted summary judgment to the insurers. 551 U.S. at 70.

**B.     The "Factual Disputes" Addressed in Compulife's Opening Brief are Either Irrelevant or Were Previously Resolved by the District Court in the Judgment Upon Which Compulife Seeks to Collect.**

Compulife spends the large majority of its Opening Brief reciting irrelevant facts and unsuccessfully attempting to create disputes of material fact where none exist. (Opening Brief, Pgs. 24-27, 34-41). In doing so, Compulife demonstrates its misunderstanding of fundamental concepts of insurance law and, in particular, the standards for determining an insurer's duty to indemnify a judgment against its insured. The duty to indemnify is determined by adjudicated facts and determinations made in the underlying dispute, which form the basis for the judgment upon which a claimant seeks to collect; it does *not* require the District Court to relitigate facts previously determined in the underlying dispute, as Compulife contends. *E.g.*, *Stephens*, 749 F.3d at 1324 (insurer's duty to indemnify determined by "the underlying facts ***adduced*** at trial or developed through discovery during the [underlying] litigation") (internal quotations and citation omitted) (emphasis added); *Mt. Hawley Ins.*, 228 F. Supp. 3d at 1325 (same); *U.S. Fire Ins.*, 930 So. 2d at 691 (same).

For example, Compulife contends summary judgment in favor of Zurich was improper because there are factual disputes regarding Binyomin Rutstein's involvement in the misappropriation of Compulife's trade secrets and, specifically, whether or not Binyomin Rutstein's conduct was intentional or merely negligent. (Opening Brief, Pgs. 32-34).  Compulife's contentions, however, blatantly disregard the District Court's unequivocal findings in the July 2021 Order, *i.e.*, that *all* Defendants, including Rutstein, "willfully and maliciously" misappropriated Compulife's trade secrets.  (Doc. 310, Pg. 43).  Although there may have been issues of fact on the intentionality of Binyomin Rutstein's conduct in the underlying Suits warranting trial, those issues of fact were definitively resolved by the District Court when it determined in the July 2021 Order: (1) "Defendants ***intentionally*** sought to acquire Compulife's trade secrets ***through improper means***"; (2) Defendants "st[ole] a significant portion of Compulife's data, and ***knowingly*** incorporat[ed] that stolen data into its own websites"; (3) "[m]isappropriation of trade secrets is an ***intentional tort*** in the state of Florida"; (4) "Compulife has ***established*** that Defendants acted ***willfully*** and ***maliciously*** in misappropriating Compulife's trade secrets"; (5) ***"[e]ach*** Defendant played a ***critical role*** in the enterprise to misappropriate Compulife's trade secrets"; (6) "***all four*** Defendants were involved in either directly acquiring Compulife's trade secrets or in using these trade secrets for economic gain and/or to the detriment of Compulife"; (7) "given the

*collaborative efforts of all four Defendants*," each of the Defendants is "liable for misappropriating Compulife's trade secrets" and jointly and severally liable for the damages awarded to Compulife; and (8) "imposing joint and several liability against *all of the Defendants* named in these actions is proper." (Doc. 310, Pgs. 41-44) (emphasis added).

As to the "evidence" Compulife relied on in the summary judgment proceedings and continues to rely on in the Opening Brief, none of it creates a genuine issue of material fact precluding summary judgment in Zurich's favor with respect to the Writ. Compulife's reliance on pre-Judgment testimony from Defendants and self-serving post-Judgment testimony from Binyomin Rutstein is misplaced and unpersuasive. (Opening Brief, Pgs. 24-27; Doc. 439, Pgs. 4-10 ¶¶ 48-82). With respect to Defendants' pre-Judgment testimony, none of Defendants' contentions emphasized in Compulife's Opening Brief should be new or surprising, as Defendants have, for several years, consistently denied they misappropriated Compulife's trade secrets. The District Court presumably considered Defendants' testimony, among other evidence presented prior to and at the November 2020 trial, assessed the credibility of the various Defendants, and determined in the July 2021 Order that *all* Defendants, including Binyomin Rutstein, willfully and maliciously misappropriated Compulife's trade secrets, an intentional tort under Florida law. (Doc. 310, Pgs. 42-44). Thus, Compulife's "evidence" of

40

pre-Judgment testimony from other Defendants does not create a genuine issue of material fact precluding summary judgment on the issue of whether Binyomin Rutstein's conduct was intentional or merely negligent.

With respect to Binyomin Rutstein's April 2022 deposition testimony, it is unsurprising Binyomin Rutstein continues to deny his liability for trade secret misappropriation, as he is appealing the Judgment and has every incentive to either avoid liability or argue the Policy, under which he is an insured, provides coverage for the Judgment against him. (*See* Doc. 441-1). Binyomin Rutstein's post-Judgment deposition testimony, however, does not and cannot change the basis for the Judgment—*i.e.*, the District Court's findings of fact and conclusions of law in the July 2021 Order—and is therefore irrelevant to Compulife's garnishment proceedings and this appeal. It does not matter what Binyomin Rutstein now contends he did or did not do; what matters, in the context of Compulife's garnishment proceedings to collect on the Judgment under the Policy, is what **the District Court** determined Binyomin Rutstein did or did not do. The District Court's determinations are what matter and those determinations (as reflected in the July 2021 Order and the Judgment) are not—and cannot be—in dispute. (*See* Doc. 310; Doc. 439, Pgs. 3-4 ¶¶ 28-40). *E.g.*, *Stephens*, 749 F.3d at 1324; *Mt. Hawley Ins.*, 228 F. Supp. 3d at 1325. Thus, contrary to Compulife's contentions

in its Opening Brief, there are no genuine issues of material fact precluding summary judgment.

It is unnecessary and improper for the District Court to relitigate—as Compulife would have it do—the facts previously adjudicated in the July 2021 Order and the Judgment. Compulife must live with the facts adjudicated in the Suits which resulted in the Judgment it seeks to collect. Compulife pursued Binyomin Rutstein, convinced the District Court he should be held jointly and severally liable for the intentional tort of trade secret misappropriation, and obtained a judgment to that effect. Binyomin Rutstein can explain and justify his conduct all he wants, and has endeavored to do so in his appeal of the Judgment, but what matters for purposes of Compulife's garnishment proceedings is what *the District Court* determined in the July 2021 Order and the Judgment upon which Compulife seeks to collect. As to what the District Court determined in the Judgment, there is no—and cannot be any—dispute: Binyomin Rutstein is liable for the *intentional* tort of trade secret misappropriation because he "*intentionally* sought to acquire Compulife's trade secrets through *improper means*" and "acted *willfully* and *maliciously* in misappropriating Compulife's trade secrets." (Doc. 310, Pgs. 40-43) (emphasis added). The conduct underlying an intentional tort cannot, by definition, be negligent, and none of the "disputes of facts" Compulife attempts to create in the Opening Brief can change this fundamental principle. Accordingly, for the reasons

42

described above, the Policy does not afford coverage for the Judgment against Binyomin Rutstein.

## <u>CONCLUSION</u>

The District Court correctly determined the Policy does not afford coverage for the Judgment against Binyomin Rutstein because the Claim, as articulated in the Suits, did not arise out of a negligent act, error, or omission by Binyomin Rutstein in the rendering or failing to render Professional Services for others.  In addition, or in the alternative, the Policy does not afford coverage for the Judgment because Exclusion A and Exclusion J of the Policy apply to exclude coverage.

For the reasons described herein and in the Summary Judgment Order, the Court of Appeals should affirm the District Court's grant of summary judgment in favor of Zurich.

Respectfully submitted,

/s/ *Tory M. Bishop*
Tory M. Bishop
*Admission Pro Hac Vice*
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102
Telephone: (402) 346-6000
Facsimile:  (402) 346-1148
Email: tory.bishop@kutakrock.com

*Attorneys for Zurich American Insurance Company*

43

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Answer Brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(b).  This brief contains 10,222 words, including headings, footnotes, and quotations and excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4, according to Microsoft Office 365, the word-processing system used to prepare this brief.  This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using 14 point Times New Roman font.

/s/ *Tory M. Bishop*

Tory M. Bishop

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *Appellees' Answer Brief* has been sent to the following:

Joel B. Rothman, Esq.
Layla T. Nguyen
SRIPLAW, P.A.
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
joel.rothman@sriplaw.com
layla.nguyen@sriplaw.com

*Attorneys for Plaintiff/Garnishor - Appellant*
*Compulife Software Inc.*

I further certify that one original and 4 copies of the foregoing has been sent via Federal Express Standard Overnight this 19th day of April, 2023 for filing with the Court at the address below:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia  30303

/s/ *Tory M. Bishop*
Tory M. Bishop
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102
Telephone: (402) 346-6000
Facsimile:  (402) 346-1148

*Attorneys for Garnishee-Appellee*
*Zurich American Insurance Company*

45